## COX v. REPUBLIC NAT. CO., et al.

No. 13636.

Court of Civil Appeals of Texas. Fort Worth.

Dec. 3, 1937.

Rehearing Denied Jan. 14, 1938.

E. M. Grimes, of Taylor, for appellant.

Eugene De Bogory, of Dallas, for appellee.

SPEER, Justice.

Prior to the institution of the suit from which this appeal came, the Bartlett National Bank of Bartlett, Tex., had procured a judgment against Charles S. Mitchell for over $11,000 in a Bell county district court. That bank had thereafter procured a writ of garnishment and had it served on Republic National Bank & Trust Company, a National Banking corporation of Dallas, Tex.; the garnishee had answered in the Bell county district court, among other things, that it was a corporation and that defendant Mitchell owned 800 shares of its capital stock, and that it was informed and believed that the said Mitchell had previously assigned, pledged, and delivered said shares of stock to Republic National Company, a corporation of Dallas county, Tex., as collateral security for an indebtedness of $25,000.

Upon a hearing in the Bell county district court of the writ of garnishment and the answer, judgment was rendered in favor of the Bartlett National Bank against the garnishee, Republic National Bank & Trust Company. for all the right, title, and interest defendant Mitchell had in or to the shares of stock in garnishee corporation, as shown by the latter's answer, and that execution issue therefor.

By a written assignment, the Bartlett National Bank transferred to W. E. Cox all of its rights in and to the judgment against Mitchell, as well also the rights acquired by it under the writ of garnishment and the judgment thereon.

On June 19, 1934, the Republic National Company accepted and, at all times during the controversy in this suit, held an independent written collateral agreement and contract with Charles S. Mitchell, by which the 800 shares of stock in Republic National Bank & Trust Company were pledged to secure the payment of all indebtednesses he should owe to the pledgee from time to time. At the time of the collateral security agreement and the pledge of the stock, Mitchell owed Republic National Company a note in the principal sum of $25,000, providing for interest and attorneys fees. The contract of collateral security provided that the pledgee could, upon default of payment by Mitchell, without notice, advertisement, or demand, sell at public or private sale all or any part of the securities held by it, and deliver the securities so sold to the purchaser; that the pledgee could become the purchaser at such sale the same as could any stranger.

An execution was issued out of the Bell county district court on the garnishment judgment above mentioned and was placed in the hands of a constable of Dallas county, Tex., where the garnishee Republic National Bank & Trust Company had its domicile; a levy was made on the 800 shares of stock by the constable on December 16, 1935, and after notice as required by law in such cases, the shares of stock were sold at public sale to W. E. Cox on December 30, 1935. The officer's return on the execution recited the matters above mentioned as well also that the officer had "Executed and delivered to him (the purchaser) a conveyance of all the right, title, interest and claim which the said Charles S. Mitchell had in said corporate stock."

On December 28, 1935, after notice to Mitchell of its intention to do so, Republic National Company, the pledgee of the shares of stock, sold at private sale to itself the 800 shares for $33 per share, and notified the Republic National Bank & Trust Company of such sale and procured from said last-named bank a cancellation of the shares of stock so held and sold by the pledgee and a reissue by the bank of an equal number of said shares to the purchaser in the forenoon of December 30, 1935, prior to the public sale by the constable on that date.

On about January 30, 1936, W. E. Cox instituted this suit in a district court of Dallas

county against Republic National Bank & Trust Company, to whom we shall refer as "defendant Bank," and Republic National Company, to whom we shall refer as "defendant Company." A second amended petition was filed on September 23, 1936, upon which the case was tried. The amended pleading set out substantially all the matters hereinabove stated by us, and the answers by defendants confirm them, along with other defensive matters to which we shall later refer.

Allegations were made by plaintiff that the garnishment proceedings and the levy made by the constable impounded in the hands of defendant bank the shares of stock, so that they were thereafter in custodia legis and that the sale by defendant company was void and that no title passed thereunder; that the cancellation of the old shares by defendant bank and the reissue to defendant company were in violation of the provisions of article 4084, Rev.Civ. Statutes, and that by reason thereof plaintiff was entitled to redeem the shares of stock from the defendant company by payment of the indebtedness held by it, which plaintiff offered to do, under an order of the court fixing the amount and a time when such payment should be made.

Plaintiff averred that at the time of filing his second amended petition the fair market value of the shares of stock was $51 per share, and that, because of the wrongful acts of defendant bank in recognizing the private sale by defendant company, the cancellation of the old shares and the reissue, plaintiff had been damaged in an amount equal to the difference in the amount for which defendant company sold the stock and its value at the time of filing the pleading.

Prayer was for damages against defendant bank for $16,000, alleged to be the amount of plaintiff's loss by reason of that defendant's wrongful acts; in the alternative that, if it should be determined that he was not entitled to the difference in the amount due on the $25,000 note and the highest market value of the stock since December 30, 1935, to the date of trial, then for a judgment canceling the pretended sale by the defendant company on December 28, 1935, and that the amount due on said $25,000 note be ascertained and he be given the privilege of redeeming said shares of stock by paying the amount due, and for judgment ordering that the defendant company accept same and to surrender to defendant Bank the shares of stock issued on December 30, 1935, and for the defendant bank to cancel same and to enter on its books a memorandum of said execution sale and to issue to plaintiff 800 shares of said stock under his purchase at constable's sale. An additional alternative prayer embraced an order of the court decreeing that each of the defendants be barred from asserting or claiming that any part of a certain indebtedness of $35,700, evidenced by note of Mitchell and procured by defendant company after the institution of the garnishment proceedings, was secured by the pledged stock.

Special exceptions were sustained by the court to allegations of plaintiff that he had been damaged $16,000, that being the difference between the amount due on the $25,000 note and the highest market value of the stock up to the time of the trial, by the wrongful acts of defendants in the sale and transfer of the shares of stock without authority of law, and by the sale of the shares to defendant company without in the utmost good faith attempting to procure the real value for the shares of stock. The plaintiff excepted to the rulings of the court and brings them forward in this appeal by assignments of error.

Each of the defendants answered, by general denials and by special pleas that the defendant company held Mitchell's note for $25,000 secured by a separate collateral agreement and assignment of the shares of stock, all long prior to the time of the garnishment proceedings in Bell county, and that defendant bank had notice thereof and had entered upon its stock books data to that effect, and that defendant bank disclosed all of said facts in its answer in garnishment; that defendant company was in no way a party to the garnishment proceedings, and that its rights were fixed by contract between Mitchell and the company with certain obligations on the part of the defendant bank with respect thereto.

Further special defenses were urged to the effect that the garnishment suit in Bell county did not so impound the 800 shares of stock as to interfere with the rights of defendant company as pledgee, to sell the same under the terms of the collateral agreement, nor to prevent defendant bank from recognizing the rights of the defendant company under a contract prior to garnishment.

The collateral agreement was pleaded in hæc verba, which provided that the shares of stock should secure all indebtednesses held

by defendant company; they further answered that the defendant company owned and held a note against Mitchell in the principal sum of $30,700 in addition to the $25,000 note, and that, if it should be found by the court that the shares of stock did not bring their full value when sold by defendant company to itself, then any excess value thereof could and would be placed as a credit on the first mentioned note.

Allegations were made that defendant company did sell the securities at private sale to itself on December 28, 1935, under the terms of the collateral agreement, and that title to the shares of stock passed thereunder; that it paid in credit on Mitchell's obligation held by it, at the rate of $33 per share, declared to be the full market value at that time and place.

Trial was had to the court without a jury. Judgment was entered for plaintiff, W. E. Cox, against defendants jointly and severally in the sum of $567.72. All parties excepted and gave notice of appeal; but only plaintiff, Cox, has perfected an appeal to the Dallas Court of Civil Appeals, and by order of the Supreme Court the cause has been transferred to this court for review.

By sixteen assignments of error supported by appropriate propositions thereunder plaintiff complains of the judgment of the court above shown. In his brief he contends that under these assignments and the record of the case he has shown that the court erred in finding as a matter of fact and of law that: (a) The sale made by the defendant company on December 28, 1935, was not void by reason of the shares of stock being in custodia legis by virtue of the garnishment proceedings against defendant bank, and by virtue of the levy of execution thereon by the constable under the garnishment judgment; (b) that under the provisions of article 4084, Rev.Civ.Statutes, the recognition by defendant bank of the sale by the defendant company did not render such sale void, and (c) that, because the defendant company did not exercise the utmost good faith in the sale of the shares of stock, the sale was not for that reason voidable.

After a careful study of the whole record, we believe the trial court has properly determined the rights of the respective parties.

The court filed findings of fact and conclusions of law. The facts found are supported by the statement of facts in the record. There is no objection urged to the court's fact findings. He found substantially all the facts to be as pleaded by the respective parties relating to the nature and acquisition by plaintiff of his claim against Mitchell; the garnishment suit in Bell county and the answer of the defendant bank, the judgment therein, the execution and levy by the constable, and the sale on December 30, 1935; he found as a fact that defendant company was not a party to the garnishment suit, and that it had held prior to any of the court proceedings an indebtedness against Mitchell in the principal sum of $25,000 secured by a collateral agreement with Mitchell assigning, pledging, and delivering to defendant company the 800 shares of stock, with the right of private or public sale to itself or any other person upon default by Mitchell; that, after notice by defendant company to Mitchell of its intention to sell the securities, it did sell to itself at private sale on December 28, 1935, said shares of stock for the sum of $33 per share; that on December 30, 1935, and prior to the sale at public auction by the constable, the defendant bank canceled the old shares that were held and sold by defendant company, and reissued a like number of shares to the defendant company. The facts in controversy between the parties were found by the court in effect to be that the defendant company did not in good faith sell the shares of stock for their reasonable market value; that they were worth at the time and place of sale the sum of $35.50 per share.

Based upon the facts so found, the court concluded that as a matter of law, in so far as defendant bank was affected, the shares of stock were in custodia legis, and that it had no right to recognize a sale or disposition of the stock by its codefendant, nor to cancel the old certificates or to issue new ones in lieu thereof. But that none of the proceedings had in the courts, to which defendant company was not a party, affected its rights under the contract with Mitchell; that the provisions of article 4084, R.C.S., were inapplicable to that defendant, and the sale by it of the shares of stock was not void.

The court further concluded as a matter of law the plaintiff had no right to redeem the certificates of stock by payment to the purchaser the amount due on the $25,000 at the time of the sale; but that defendant company owed to Mitchell, as well as to all other parties interested in the stocks, the

duty to use due diligence in the sale, so as to protect such outstanding rights of others, and that, because defendant company failed in this respect and the defendant bank recognized such sale and acted thereon, they became jointly and severally liable to plaintiff, who had acquired the rights of Mitchell at the constable's sale, for the difference in the market value of the stocks and the amount owing on the $25,000 note. The court further found that plaintiff was not entitled to have the sale by defendant company set aside and to establish his right to redeem the shares of stock by payment of the indebtedness; there was a further conclusion, in response to plaintiff's prayer, that both defendants be forever barred from thereafter claiming the $30,700 was secured by the pledge of the shares of stock.

The judgment rendered shows there was due on the $25,000 note on December 28, 1935, the sum of $27,832.28, and, by calculation, the 800 shares of stock at $35.50 per share, the amount found by the court to be their fair market value, will amount to $28,400, the difference being $567.72, the amount for which judgment was rendered.

 It is so fundamentally true that only parties to suits are bound by the judgments rendered therein that citation of authorities to that effect would be useless. There are conditions, however, when a judgment rendered may affect the rights of persons not named in the pleadings as well as those who were not served with process, but none of those conditions arise here. Only the defendant bank was bound by the judgment in garnishment and the subsequent levy by the constable. The provisions of article 4084, R.C.S., are applicable to that defendant. By the terms of that article a corporation garnishee, in which the defendant owns shares of stock, is prohibited from permitting or recognizing any sale or transfer of such stock or interest therein, and, if such sale or transfer is permitted or recognized by the corporation, such acts shall be void in so far as it affects the debt upon which the writ was issued. The defendant bank, being bound by the judgment in garnishment, violated the provisions of this statute when it recognized the sale and passing of title by the defendant company, and thereafter canceled the old certificates and reissued others in their stead. These acts rendered it jointly liable with its codefendant for the damages that followed by the acts of defendant company. Hatley v. West Texas National Bank, Tex.Com.App., 284 S.W. 540; Pure Oil Co. v. Walsh-Woldert Motor Co., Tex.Civ.App., 36 S.W. 2d 802, writ dismissed.

 The writ of garnishment, the judgment and execution thereon did not affect any rights acquired by the defendant company prior to the garnishment proceedings. It is undisputed that the defendant company owned the $25,000 note and held the written collateral agreement assigning the equities of Mitchell in the bank stock, prior to the institution of the garnishment suit. It will be observed that the garnishment judgment, and the subsequent levy and sale, only covered the right, title, and interest of Mitchell in the shares of stock. Clearly his interest was limited to any excess in the value thereof, if any, over and above a sufficient amount to pay the indebtedness for which he had assigned the stocks to secure. The garnishor acquired no more rights therein than Mitchell had. He, in effect, assumed the relation to the shares of stock that Mitchell had at the time the writ was issued. Moore & Bridgeman v. United States Fidelity & Guaranty Co., 52 Tex.Civ. App. 286, 113 S.W. 947, writ refused; Hubbell, Slack Co. v. Union Cotton Co., Tex. Civ.App., 196 S.W. 681, writ refused; Stanard v. Cantwell, Tex.Civ.App., 286 S.W. 760; Pittsburgh Plate Glass Co. v. Beck, Tex.Civ.App., 298 S.W. 915, writ dismissed; Mensing v. Engelke, 67 Tex. 532–537, 4 S.W. 202. The latest expression on the point by the Supreme Court is in Beggs v. Fite, 106 S.W.2d 1039, 1042, where it is said: "A plaintiff in garnishment is, by virtue of the statute, subrogated to the rights of his debtor against the garnishee. In other words, by strict compliance with our garnishment statutes, a plaintiff in garnishment merely steps into the shoes of his debtor as against the garnishee, and may enforce, as against such garnishee, whatever rights the debtor could have enforced had such debtor been suing the garnishee directly."

 Under the assignments of error presented plaintiff challenges the conclusions of law by the trial court to the effect that the writ of garnishment did not impound the property consisting of the shares of stock then in the hands of defendant company; he contends that, because the subject matter of the suit consisted of the stocks owned by Mitchell in the defendant bank, the defendant company, the pledgee, could not make a sale thereof pending the

garnishment judgment and levy by the constable. There is no merit in these assignments. Our courts have spoken on this point frequently. In Adams v. Williams, 112 Tex. 469, 248 S.W. 673, 676, this language was used: "The service of a writ of garnishment impounds only such debt or debts as the garnishee in fact owes to the defendant in garnishment at the time. It does not impound debts owed by the garnishee, which, prior to the service of the writ, have passed by valid assignment from the defendant to another." See, also, South Texas Lumber Co. v. Nicoletti, Tex.Civ. App., 54 S.W.2d 893, writ dismissed; Barrett v. Craft, Tex.Civ.App., 57 S.W.2d 387; Auburn-Dallas Co. v. F. Del Rio C., Tex. Civ.App., 51 S.W.2d 639.

There were no legal impediments in the way of defendant company making a valid sale of the shares of stock which had been previously assigned to it as collateral security for its debt, and the sale made passed the title; it became the purchaser; this was permissible under the contract. This being true, if no writ of garnishment had been issued and heard, Mitchell could not have complained. The plaintiff in this case having assumed the status of Mitchell with relation to the property, likewise he would not have the right to redeem the stocks after they became more valuable, by paying the indebtedness. If the bank stock had depreciated in value after the purchase by defendant company, it would have had to take the loss. The right of redemption to Mitchell did not exist, and therefore plaintiff acquired none by a purchase at the constable's sale of all right, title, and interest of Mitchell in the shares of stock.

The court properly found that defendant company owed to plaintiff, the then owner of the rights of Mitchell, good faith and reasonable diligence to sell the stocks for as much as it could; and, if it sold to itself, equity and fair dealing would require it to pay the reasonable market value then prevailing. The court found it did not do this, but purchased the stocks at $33 per share when they were reasonably worth $35.50 per share, the difference being $567.72, the amount for which he rendered judgment.

There was no error committed by the court in sustaining the special exceptions to the parts of plaintiff's pleadings, as above indicated, nor in the exclusion of testimony of the highest market value of the stocks since the sale by defendant company.

As above stated, we believe the issues have been properly disposed of, and, finding no error for which the case should be reversed, the judgment of the trial court is affirmed.