### FAIVRET v. FIRST NAT. BANK IN RICHMOND et al.
### No. 23334–R.

District Court, N. D. California, S. D.
Oct. 30, 1945.

Arthur W. Brouillet, Robert H. Fouke, Frank J. Perry, and Arthur P. Shapro, all of San Francisco, Cal., for plaintiff.

Irving C. Sugarman, Louis L. Bernheim, and James M. Popper, all of Richmond, Cal., for defendants.

ROCHE, District Judge.

This is an action for damages for conversion of certain warehoused merchandise held by the defendant Bank as pledgee. The case was tried to the Court without a jury and the record discloses the following pertinent facts:

Faivret, the plaintiff, is a French refugee with a background of apparently successful experience as a merchandise jobber in his native France. In the late summer of 1943 he decided to establish a similar business in San Francisco but having only $3200 as capital, he needed financial assistance. Through one A. B. Uhrich of the Douglas Guardian Warehouse Company he was introduced to the defendant Partridge, president of the defendant First National Bank in Richmond, and arrangements were made with the Bank for financing by a system of field warehousing and assign-ment of accounts receivable. Under this plan, merchandise purchased by Faivret was to be placed in a field warehouse established on his premises and warehouse receipts covering the same were to be issued to the Bank. The Bank would then loan up to 85 per cent of the invoice price of the merchandise so purchased, with the proviso that all such purchases were to be subject to the Bank's approval before advancing money thereon. A "blanket release" agreement provided for the release to Faivret of $3,000 worth of merchandise each week. When this was sold the resulting accounts receivable were assigned to the Bank which was to lend 90 per cent of the invoices covering such sales. These accounts were also subject to the Bank's approval.

In the early part of 1944 the Bank advised Faivret that the accounts receivable entailed too much work and asked him to secure another financial arrangement, which he did. At that time, too, the warehouse receipt loans were reduced from 85 per cent to 60 per cent. Towards the end of March, 1944, the Bank advised Faivret that the National Bank Examiner had disapproved the loans and ordered the Bank to get its money out as quickly as possible. Faivret attempted to secure other warehouse receipt financing but was unsuccessful and on April 25, 1944, the Bank made formal demand on him for payment of all his notes. Efforts to liquidate the indebtedness without resort to foreclosure proved abortive, and sale of the pledged property was noticed for May 22, 1944. Plaintiff made formal written objections, proceeding on the theory that the warehouse receipt loans and accounts receivable loans were entirely separate transactions and, in the absence of a general pledge agreement, the existence of which was claimed but not proved, the pledged merchandise could be sold only to satisfy the amount it specifically secured and not the total indebtedness. Plaintiff also takes the position that his failure to tender the amount so specifically secured was excused by what he terms the Bank's "excessive demand."

Assuming that the plaintiff never signed a general pledge agreement, the Court is satisfied from the evidence that the loan transactions were so inter-related that the warehoused merchandise could legally be sold to satisfy all the indebtedness. However, even if they were not, the Bank's alleged "excessive demand" would not ex-

cuse the tender of the sum plaintiff claimed was secured by the pledge of warehouse receipts. "The mere assertion, unaccompanied by any other act, of a lien greater in amount than that to which the lienor is entitled, will not dispense with the necessity of a tender." Bell v. Bank of California, 153 Cal. 234, 242, 94 P. 889, 893.

The sale itself is attacked by plaintiff for asserted irregularities as to time, place and manner in which held and from these he seeks to spell out a conversion.

Sales of pledged property in California are governed by Sections 3005 and 3010 of the Civil Code and Section 694 of the Code of Civil Procedure. They provide that such sales must be made by public auction, to the highest bidder, between the hours of 9:00 a. m. and 5:00 p. m. When the sale is of personal property, capable of manual delivery, it must be within view of those who attend the sale, and be sold in such parcels as are likely to bring the highest price. The pledgee or pledge-holder may become a purchaser.

It appears from the evidence that the instant sale was noticed for 9:00 a. m. on May 22, at the field warehouse on the plaintiff's premises. Testimony as to the actual arrival time of all the parties is conflicting but they were all present by 9:20 and plaintiff alone was responsible for delaying the sale until 11 o'clock. When Baer and Friedman, the only two prospective bidders, sought permission to inspect the merchandise, it was refused until they had been made agents of the defendant Bank. Plaintiff then refused to allow the sale in the presence of the property because of a clause in his lease. As a result, the sale was conducted on the sidewalk in front of the building, with Sugarman, the Bank's attorney, acting as auctioneer. Baer and Friedman bid $30,000 and $32,500, respectively, for the whole amount of the merchandise, after declaring that they were not interested in bidding on it in lots. Plaintiff was offered the opportunity to bid, but declined, and when it appeared that the property might be sold for substantially less than his indebtedness, his attorney suggested that the Bank bid. Thereupon the defendant Partridge bid the property in for $52,000. Immediately thereafter the Bank's attorney offered to let the plaintiff redeem the merchandise by payment in full with all expenses to date. The day following the sale the Bank began removing the property to another warehouse and subsequently sold it to Baer and Friedman for $60,000. Plaintiff made no move to redeem the merchandise but instead, on May 24, filed this action for conversion.

■ It is clear from the foregoing that the sale fell short of full compliance with the California code provisions but this resulted from the plaintiff's conduct. He cannot now be heard to complain of irregularities which he himself invited. Even the fact that the pledgee, through its agents, acted as both seller and purchaser resulted, at most, in a voidable sale with the relation of pledgor and pledgee unchanged. First National Bank of Kansas City v. Rush, 10 Cir., 85 P. 539. Had the Bank refused to recognize plaintiff's right to redeem, there would have been a conversion. The Bank, however, was diligent in reminding plaintiff of this right and it disposed of the property only after this action had been filed.

This is a very different situation from those cases where irregularities in the sale resulted in an over-reaching of the debtor, or where the debtor's right to redeem was denied.

■ The record discloses no evidence that the failure to hold the sale at the advertised time, or in the presence of the merchandise, or by lots, or the delay in inspecting the goods, or the fact that the Bank acted as seller and purchaser, resulted in the loss to plaintiff of a single prospective bid. Whether they be considered separately or all together, there is no showing that the plaintiff suffered any prejudice from these irregularities of which he complains, and which resulted from his own conduct.

Defendant First National Bank's counterclaim for the alleged balance due on plaintiff's notes was not pressed on the trial and there is a failure of proof in support of it. Judgment, therefore, will be ordered entered, upon findings of fact and conclusions of law, in favor of the defendants on plaintiff's complaint and in favor of the plaintiff and against the defendant Bank on the latter's counterclaim.