TED CONNER LONGLEY, AS RECEIVER OF ROBERT A. PIERCE CO., A DISSOLVED NEVADA CORPORATION, APPELLANT, *v.* HEERS BROS., INC., A CALIFORNIA CORPORATION; ALLIED CORPORATION, A NEVADA CORPORATION; UNITED PACIFIC INSURANCE COM- PANY, A WASHINGTON CORPORATION; INLAND EMPIRE BUILDERS, INC., A CALIFORNIA CORPORA- TION; RIVERSIDE PLAZA, INC., A CALIFORNIA COR- PORATION, RESPONDENTS.

No. 6020

July 15, 1970                           472 P.2d 350

*Morton Galane,* of Las Vegas, for Appellant.

*Foley Brothers,* of Las Vegas, for Respondents.

## OPINION

By the Court, MOWBRAY, J.:

This appeal arises from two mechanic's lien foreclosure actions that were commenced in the district court and were consolidated for trial. The district judge denied the plaintiff-appellant's prayer for foreclosure. Instead, he granted a $7,202.41 judgment in favor of one of the defendants-respondents, Heers Bros., Inc., who owned the properties that plaintiff-appellant sought to foreclose, on the ground that

Heers, as general contractor of the building projects for which the materials had been furnished, had overpaid plaintiff-appellant by that amount.[1] We affirm the judgment of the district court.

1. *The Facts.*

Heers Bros., Inc. is a general building contractor and the owner of the properties the subject of these foreclosure actions. Heers engaged respondent Allied Corporation as a subcontractor to plaster and lath several buildings that Heers was constructing in Clark County. Allied purchased its lathing and plastering materials from Pierce for the two principal building projects that are involved in this litigation.

A. *Project No. 1.*

Sometime prior to November 1962, Heers subcontracted with Allied to do the lathing and plastering work on the following buildings: (1) Heers-Roeder office building; (2) Parkdale, a multiple-apartment project; and (3) Charles Heers's home.[2] The buildings constituting Project No. 1 were completed. Heers paid Allied in full for lathing and plastering the buildings.

B. *Project No. 2.*

Sometime after November 1962, Heers commenced Project No. 2, known as Fairway Gardens, a multiple-apartment complex. Again Heers employed Allied as its subcontractor to do the lathing and plastering, and Allied, as it had done on Project No. 1, purchased the lathing and plastering materials from Pierce.

In March 1963, during the construction of Fairway Gardens, Jackson Pierce, who was an officer of the Robert A. Pierce Co., learned that Heers had paid Allied in full for the work done on Project No. 1. Since Allied had failed to pay Pierce in turn, Pierce then arranged with Heers for all progress payments on Project No. 2 to be made payable to *both* Allied *and* Pierce. Thereafter, Heers made all project payment checks for Project No. 2 payable to Allied and Pierce jointly. These checks totaled $56,395.71, which Pierce received in toto.

After the project was completed, but before the lien period had expired on Project No. 2, Pierce billed Allied for $60,-502.80. Allied paid only part of that amount; so Pierce liened Project No. 2, Fairway Gardens, for $43,144.20, which Heers

---

[1] Robert A. Pierce Co., now a dissolved corporation, was a plaster and lath supplier. Pierce furnished the materials that constituted the basis for the claims of lien. L. A. Longley was named receiver for Pierce, and he was substituted as party plaintiff. Upon his demise, Ted Conner Longley was named party plaintiff.

[2] Charles Heers is president and a stockholder of Heers Bros., Inc.

refused to pay. Before the trial of the foreclosure actions, Pierce acknowledged that its lien claim had been overstated by 17.8 percent and reduced its claim to $36,157.46. In arriving at this figure, Pierce applied all the payments received by joint checks on Project No. 2 on the debt Allied owed Pierce for Project No. 1. Pierce's principal argument for this appliction of the moneys received is that Heers agreed to such an arrangement in exchange for Pierce's promise not to lien Project No. 1. Heers claims that such was never the case, but, rather, that Heers agreed to Pierce's request for joint checks so that Pierce would be assured payment for Project No. 2.

## 2.   *The Admissibility of the Telephone Conversation.*

Charles Heers testified that he received a phone call from a person identifying himself as Mr. Lloyd Kibby of the Pierce company advising him that the joint checks should be made payable to Allied and Pierce because Pierce had not been paid in full for Project No. 1 and Pierce wanted to make sure it received payment for Project No. 2.[3] Appellant urges that it was reversible error to receive in evidence Heers's testimony regarding the phone call, since the phone call was not authenticated because Heers could not identify the caller's voice. Counsel for appellant acknowledged in oral argument, however, that if the telephone call and the conversation were properly received, such evidence was sufficient to support the trial court's No. 9 finding[4] that the joint payments were to be applied only on Project No. 2.[5]

Appellant urges that an insufficient foundation was laid for the introduction in evidence of the telephone conversation. It is true that Heers could not represent to the court that he recognized the caller's voice. This court has ruled that a telephone

---

[3]Kibby denied making the call. He did admit that Jackson Pierce had phoned Heers requesting joint checks, but Kibby said that Jackson did not state the checks were to be applied on Project No. 2.

[4]Finding No. 9 provides:

"9.  Jackson Pierce personally requested the joint checks from Heers and Jackson Pierce knew the source of all of said funds in the amount of $56,935.71 and he knew that the monies were coming from Heers to Allied and to Pierce and that all of said monies in the amount of $56,935.71 should have been allocated to Heers Fairway Gardens Projects 2, 3 and 4."

[5]Question by the court: "Would you agree that if the unauthenticated voice and what it said were properly received in evidence there is support for the court's finding of fact No. 9 and for the result thereby reached?

Answer by Morton Galane, Esq., counsel for appellant: "I do, your Honor."

conversation is admissible if the identity of the caller is established. We have also held that such identification may be satisfactorily shown by circumstantial evidence. King v. State, 80 Nev. 269, 392 P.2d 310 (1964); State v. Billings, 84 Nev. 55, 436 P.2d 212 (1968); 7 J. Wigmore, Evidence § 2155 (3d ed. 1940); Annot., 105 A.L.R. 326 (1936).

In the instant case there is sufficient circumstantial evidence in the record to support the district judge's finding that the telephone call originated with the Pierce company. The parties, Heers, Allied, and Pierce, had been working together on building projects in the roles of general contractor, subcontractor, and materialman, respectively, since 1954; joint checks to subcontractor Allied and materialman Pierce were never requested or issued prior to Pierce's request in the instant case; Allied in fact objected to the joint checks when they received the first joint payment from Heers; all sums from the joint checks were endorsed over to Pierce; Allied received not one cent. It is true that Jackson Pierce testified that the checks were in consideration for release of lien rights on Project No. 1, which testimony the district judge was free to reject.[6] The circumstantial evidence offered to prove the source of the telephone call was admissible, and the telephone conversation was sufficient to support the court's ruling that the parties intended that the joint checks were to be applied on Project No. 2, Fairway Gardens.

3. *The Heers Bros., Inc. $7,202.41 Damage Award.*

Appellant's principal objection to the award is that, because Heers failed to file a counterclaim, the court was barred as a matter of law from making the award. We do not agree. Heers claimed that Pierce had been paid in full. Heers did not counterclaim, but this does not preclude the court from granting complete relief to the parties.

NRCP 54(c) provides in pertinent part:

". . . Except as to a party against whom a judgment is

[6]It appears from the record that Pierce's lien rights had expired on Project No. 1. Common experience would dictate that they had, because any experienced contractor, upon learning that his sub was in financial distress and in fact had not paid his materialman for a previous job, would hardly agree to release joint project payments on a job then under construction to be applied on an old debt between the sub and the materialman, to which the contractor was not in privity, because the current job would then be lienable by the materialman for the moneys due him on the second project.

entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."

During the trial Pierce admitted overpayment on Project No. 2. To predicate error upon the granting of relief in this case would violate the spirit of NRCP 54(c). The issue was clearly before the court, and the evidence supports the court's ruling. It may not be disturbed on appeal.

The judgment of the district court is affirmed.

COLLINS, C. J., ZENOFF, BATJER, and THOMPSON, JJ., concur.

