GROUSE CREEK RANCHES, Appellant and Cross-Respondent, *v.* BUDGET FINANCIAL CORPORATION and NEVADA TITLE GUARANTY COMPANY, Respondents and Cross-Appellants.

No. 6225

September 13, 1971                    488 P.2d 917

*Wilson and Wilson,* of Elko, and *Keith Williams,* of Santa Ana, California, for Appellant and Cross-Respondent.

*McCune & Williams,* and *Virgil D. Dutt,* of Reno, for Respondent and Cross-Appellant Budget Financial Corporation.

*Emerson Wilson,* of Reno, for Respondent and Cross-Appellant Nevada Title Guaranty Company.

420

# OPINION

By the Court, ZENOFF, C. J.:

Condensed to its simplest form the theme of this litigation finds Budget Financial Corporation (hereinafter "Budget") as a pledgee, the holder of instruments as security for monies loaned by it to Pacific Westates Land Development Corporation (hereinafter "Westates"). Grouse Creek Ranches (hereinafter "Grouse Creek"), also a creditor of Westates, seeks collection of its claim against Westates by garnishment of Nevada Title Guaranty Company (hereinafter "Nevada Title") who held the security owned by Budget. Budget foreclosed and retained all of the value represented by its security but Grouse Creek claims at least the excess of that security over and above Budget's total claim, unless, however, we hold as a prior result that Budget may not claim any of it because of certain procedural deficiencies. Budget and Grouse Creek, as creditors of Westates, want to satisfy their judgments obtained against Westates, but Budget claims all of the security, refuses to disclose the amount realized from the security, and asserts in any event at least a prior lien claim to the security as against anyone else.

Therefore, the lawsuit, which had its inception in 1963, is a dispute between creditors. The debtor, Westates, was a real

estate development enterprise which bought large parcels of land from Grouse Creek in 1959. Originally, the time-payment sale agreement was secured by a second deed of trust but between 1959 and 1963 several parcels were released from this deed of trust and in place of this security Grouse Creek was assigned certain land sales contracts under which Westates was seller and third persons were buyers. By and after 1963, however, numerous buyers defaulted on these contracts, so Grouse Creek was left with contracts of little value, and therefore, insufficient security for the amount owed. Thus, in 1963, Grouse Creek sued Westates, *inter alia,* to recover title to other lands which had been released from the deed of trust but which were not the subject of land sales contracts assigned to it and for a money judgment.

Budget entered the picture in 1961 when it began making a series of loans to Westates. These loans were secured by pledges of groups of land sales contracts other than those described above. As the financial condition of Westates further deteriorated in 1962, Budget, Westates and Nevada Title entered into an agreement whereunder all land sales contracts and trust deeds still held by Westates, whether previously pledged or not, were deposited with Nevada Title and trust deeds to the realty were conveyed to them and recorded.

Approximately six months after this December 1962 transfer of the remaining land sales contracts, Grouse Creek garnished Westates' property in the hands of Nevada Title, the garnishee. In answering the interrogatories annexed to the writ of garnishment, Nevada Title denied being indebted to Westates, but admitted it held $9,537.54 which it had received as payments on the land sales contracts pursuant to the above-described December 1962 agreement. It also stated it did not know the extent of the interest of Westates in the contracts. The $9,537.54 held by Nevada Title was levied upon by the sheriff but apparently nothing further was done relative to subsequent payments received by Nevada Title.

In October 1963 Budget served Nevada Title with notice of default and election to sell the property represented by the December 1962 trust deed. The December 1962 agreement empowered Budget and Nevada Title to conduct a nonjudicial public sale in the event of certain defaults by Westates. Shortly after it served this notice Budget entered into an indemnity agreement with Nevada Title whereunder Budget would hold Nevada Title harmless from the effect of the writ of garnishment. Thereafter, Nevada Title released to Budget a total of about $529,000 it collected on the land sales contracts.

Grouse Creek moved to interplead Budget in November 1963 as garnishee defendant and the motion was granted a month later. Subsequently, in February 1964, the default sale was held. Budget was the purchaser of the deeds. In early June of that year it conveyed this property to a third party. Shortly thereafter Nevada Title, as trustee, also sold all land sales contracts and trust deeds in its possession to Budget. Subsequently, later in June, Budget answered the motion to interplead it as garnishee defendant by denying it held any property belonging to Westates or that Grouse Creek had any claim to property in its hands. It asserted absolute title to all property held. Grouse Creek responded to this answer by asserting, *inter alia,* that Budget had no special right to the contested property by virtue of either law or the contracts with Westates.

In March 1966 Grouse Creek obtained a default judgment against Westates on the principal action in the approximate amount of $283,000. Similarly, in December 1966 Budget obtained a substantial default judgment against Westates.

The garnishment action was subsequently tried and a decision filed in November 1968. Judgment was entered January 21, 1969. The court denied Budget's assertion of third-party rights in the property and ordered that Grouse Creek have a joint and several judgment of $338,610.05 against Nevada Title and any garnished property, payments thereon or proceeds thereof remaining in Nevada Title's possession.

On February 3, 1969 Budget moved, *inter alia,* to alter, amend and modify the findings of fact, conclusions of law and judgment. A hearing was held in May 1969 and Budget moved to amend its pleadings to conform to the evidence—*i.e.,* that under the facts shown it was entitled to a lien against the collateral in the form of the land sales contracts. The various motions were taken under advisement and in December 1969 the court held a second hearing on the merits. In February 1970 the court ruled, granting Budget's motion to amend the pleadings. Though it reaffirmed its denial of Budget's claim to absolute title, the court held that Budget was entitled to a lien upon the property because of its pledge status. The findings of fact, conclusions of law and judgment were ordered amended accordingly.

From this order Grouse Creek appeals and Budget and Nevada Title cross-appeal. Further facts will be elicited as pertinent to discussion of the issue addressed.

Basically, what Grouse Creek seeks in the principal appeal is reinstatement of the original judgment ordered in the lower

court which entitled it to recovery of $283,716.69 (the amount of its judgment against Westates) plus interest from Nevada Title. The basis of this judgment was the court's holding that Budget was not entitled to receive absolute title to the property held by Nevada Title. What Budget seeks in its cross-appeal is the relief given in neither the original nor amended judgment, namely, absolute title to the property held by Nevada Title after 1963 and sold in 1964 pursuant to the December 1962 agreement.

The issues presented in the principal appeal are as follows:

I.  Whether the lower court erred in granting Budget's motion to alter, amend and modify the findings of fact, conclusions of law and judgment because:

A.  The motion failed to state with sufficient particularity the grounds upon which it was based;

B.  The motion was merely a generalized attack on the findings and failed to specify the relief or order sought;

C.  The notice of hearing of the motion was not served within ten days after service of notice of entry of judgment;

D.  The issue of Budget's lien was not tried and the motion to amend the pleadings was untimely; and

E.  Budget had elected by its pleadings to assert only absolute title and it was estopped from later asserting a lesser interest.

II.  Whether the judgment of January 21, 1969 against Nevada Title must be sustained unless Nevada Title prevails on issue III in the cross-appeal, irrespective of the outcome of the rest of the cross-appeal and appeal.

The issues presented in the cross-appeal are as follows:

I.  Whether the cross-appeal of Budget and Nevada Title should be dismissed because the notice of appeal does not refer to an appealable final judgment or order.

II.  Whether Nevada Title, at the time of garnishment, held any property of Westates in which there was a garnishable interest.

III.  Whether Grouse Creek's failure to traverse Nevada Title's answers to the garnishment requires that it be deemed to admit the answer as true, and therefore Grouse Creek admitted Nevada Title had no property belonging to Westates.

## PRINCIPAL APPEAL

I.  Whether the lower court erred in granting Budget's motion to alter, amend and modify the findings of fact, conclusions of law and judgment because:

A. The motion failed to state with sufficient particularity the grounds upon which it was based;

B. The motion was merely a generalized attack on the findings and failed to specify the relief or order sought;

C. The notice of hearing of the motion was not served within ten days after service of notice of entry of judgment;

D. The issue of Budget's lien was not tried and the motion to amend the pleadings was untimely; and

E. Budget had elected by its pleadings to assert only absolute title and it was estopped from later asserting a lesser interest.

I. A. Grouse Creek argues that the February 3, 1969 motion to alter, amend and modify the findings of fact, conclusions of law and judgment failed to specify with sufficient particularity the grounds upon which relief was sought. Grouse Creek urges that the post-judgment proceedings were defective from the outset because of this asserted failure to meet the requirements of NRCP 7(b). United Pac. Ins. Co. v. St. Denis, 81 Nev. 103, 399 P.2d 135 (1965). Yet, Grouse Creek failed to object to the motion on the basis of this asserted defect and, indeed, engaged in lengthy argument at the May 9, 1969 hearing relative to Budget's grounds for the motion. Thus, it waived the objection. King v. Mordowanec, 46 F.R.D. 474, 477 (D.R.I. 1969); cf. Schy v. Susquehanna Corporation, 419 F.2d 1112 (7th Cir. 1970).

I. B. The record itself refutes Grouse Creek's assertion that the motion failed to do more than generally attack the findings. Unlike the movants in Heikkila v. Barber, 164 F. Supp. 587 (D. Cal. 1958) (cited by Grouse Creek), Budget sought more than the mere amendment of the findings of fact; it also asked for amendment of the conclusions of law.

Though it did not specify the exact manner in which it sought to have the judgment amended, the motion did indicate such an objective. Moreover, even assuming that to be an insufficient prayer, Grouse Creek waived such error by failing to object and by arguing at the May 9, 1969 hearing in such a way as to evidence their knowledge of the relief sought. Indeed, counsel for Grouse Creek, in argument before the lower court on May 9, 1969 recognized that Budget was asking the court "to modify its decision herein and accordingly modify its judgment."

I. C. The motion to alter, amend or modify the January 21, 1969 findings of fact, conclusions of law and judgment was filed February 3, 1969 within the NRCP 52(b) time period. On March 20, 1969 the court ordered a hearing on this motion for May 9, 1969. Grouse Creek now seeks construction of NRCP 6(d)[1] and NRCP 52(b)[2] so as to require service of notice of hearing within ten days of service of notice of entry of judgment. Under such a construction, it is argued, the order for hearing was too late, so the hearing was improper.

The suggested construction is patently unreasonable. NRCP 52(b) refers only to service of the motion to amend and requires service within ten days of service of notice of entry of judgment. NRCP 6(d) simply adds the requirement that such a motion, as well as the notice of hearing of such motion, be served at least five days before the hearing. There is not such an overlapping as would require service of both the motion and notice of hearing thereof within ten days of service of notice of entry of judgment. *Cf.* Howard v. Howard, 356 P.2d 275 (Utah 1969).

I. D. In answering to the NRS 31.350 motion and order to interplead it as a defendant in the garnishment action, Budget claimed total and absolute right to any and all money and property coming into the possession of Nevada Title. Neither at that stage nor in its post-judgment motion to alter, amend and modify did it assert the primary pledge lien interest which

---

[1]NRCP 6(d) *For Motions—Affidavits.* A written motion, other than one which may be heard ex parte, and notice of the hearing thereof shall be served not later than 5 days before the time specified for the hearing, unless a different period is fixed by these rules or by order of the court. Such an order may for cause shown be made on ex parte application. When a motion is supported by affidavit, the affidavit shall be served with the motion; and, except as otherwise provided in Rule 59(c), opposing affidavits may be served not later than 1 day before the hearing, unless the court permits them to be served at some other time.

[2]NRCP 52(b) *Amendment.* Upon motion of a party made not later than 10 days after service of written notice of entry of judgment the court may amend its findings or make additional findings and may amend the judgment accordingly. The motion may be made with a motion for a new trial pursuant to Rule 59. When findings of fact are made in actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may thereafter be raised whether or not the party raising the question has made in the district court an objection to such findings or has made a motion to amend them or a motion for judgment.

it was ultimately awarded below. Only three months after the January 21, 1969 judgment did it move to amend its pleadings to conform to the evidence, so as to assert such a claim. Grouse Creek asserts this amendment was too late and should have been denied, and hence, the primary lien claim should not have been granted.

We cannot agree that the asserted untimeliness of the motion to amend the pleadings to conform to the evidence makes improper the granting of a primary lien. Without passing on the timeliness of this motion, we need only point out that the record is abundantly clear in revealing that the issue of the respective lien rights of Grouse Creek and Budget was raised and tried. Grouse Creek itself prayed that the court "establish the priority between plaintiff [itself] and garnishee-defendant [Budget] as to the garnished property. . . ."

Because this issue was raised and tried, the court was empowered by NRCP 54(c) to grant the relief granted, if such relief was legally warranted. Longley v. Heers Bros., Inc., 86 Nev. 599, 472 P.2d 350 (1970); Checker, Inc. v. Zeman, 86 Nev. 216, 467 P.2d 100 (1970).

I. E.  Grouse Creek argues that this relief was not legally warranted, however, because Budget elected to assert only absolute title, thereby becoming estopped from later asserting a lesser interest. Numerous cases hold, however, that though a pledgee improperly asserts absolute title to the pledged property, even going so far as selling the property improperly, it does not lose the favored position afforded by its pledge lien. Hubbard v. Tod, 171 U.S. 474 (1898); First Nat'l. Bank v. Rush, 85 Fed. 539 (8th Cir. 1898); Faivret v. First National Bank in Richmond, 62 F.Supp. 1012 (N.D. Cal. 1945); Cushing v. Building Ass'n., Soc., New or Prac. Psychology, 134 P. 324 (Cal. 1913); Brittan v. Oakland Bank of Savings, 57 P. 84 (Cal. 1899).

As a creditor contesting with a pledgee (Budget) the rights to Westates' assets, Grouse Creek stood in no better position as to the pledgee (Budget) than did Westates. In re Bennett's Estate, 90 P.2d 84 (Cal. 1939); Briley v. Madrid Improvement Company, 122 N.W.2d 824 (Ia. 1963).

Grouse Creek asserts there was bad faith on Budget's part in improperly asserting absolute ownership of the pledged property, but the lower court found no such bad faith. Because that finding is supported in the record we, too, are disinclined to estop Budget from asserting its lien claim, though we agree

Budget was incorrect in asserting a right to such absolute ownership. *Cf.* Wilkins v. Redding, 97 N.W. 238 (Neb. 1903).

In sum, we find unpersuasive Grouse Creek's objections to the motion to alter, amend or modify the findings of fact, conclusions of law and judgment. Moreover, we find that the issue of Budget's pledge lien was properly presented and the lower court did not err in upholding Budget's lien as primary to Grouse Creek's interest.

II.    Whether Nevada Title, at the time of garnishment, held any property of Westates in which there was a garnishable interest.

The January 21, 1969 judgment decreed that Grouse Creek have "joint and several judgment for the sum of $338,610.05 against the garnishee Nevada Title Guaranty Company generally and individually, and against any and all of the garnished property . . . remaining in the possession or custody of said Nevada Title Guaranty Company. . . ." The post-judgment motion to alter, amend or modify was made only by Budget. Nevada Title made no motion relative to the judgment until June 23, 1969 when it made an NRCP 60(b)(4) motion to correct the judgment. This motion was denied on February 10, 1970 when the lower court rendered its decision ordering the January 21, 1969 judgment amended. The court did state, however, that "[T]he judgment herein against Nevada Title should be limited to the value of the property held by Nevada Title *as that value may ultimately be determined* under the holding of this decision *and subject to Budget's superior lien position as hereinafter determined.*" (Emphasis added.)

Grouse Creek now argues that since Nevada Title did not join in the post-judgment motion to alter, amend or modify and since its role as an appellant in the cross-appeal is limited to challenging the ruling below on one specific basis (see discussion of issue III in cross-appeal, *infra*), if it fails in that challenge the several judgment against it must be sustained regardless of the disposition of the appeal relative to Budget's third-party claim to the property.

We cannot agree. We find inapposite the numerous cases cited by Grouse Creek for the proposition that a separable judgment not attacked by one judgment debtor remains even if successfully attached by other of the judgment debtors. More than a superficial analysis reveals that the judgment, viewed in light of the law and the facts of the case, was not separable. *Cf.* Ormachea v. Ormachea, 67 Nev. 273, 291, 217 P.2d 355 (1950). Throughout the trial the parties as well as the court

regarded this action as a contest between Grouse Creek and Budget. This view is seen articulated in the above-quoted portion of the February 1970 decision.

Indeed, under the applicable statutes, such treatment seems proper. NRS 31.240 speaks of attaching *property* and NRS 31.300 allows judgment against the garnishee (Nevada Title) only if it is shown the garnishee has property belonging to the defendant (Westates). By the entry of Budget as a third-party claimant under NRS 31.350 a question mark was thrown over the requisite determination (right to the property) for a judgment under the foregoing statutes. Though it is true NRS 31.300 allows judgment against the garnishee, such judgment is proper where a third-party claimant is interpleaded only after that third-party claimant's rights are adjudicated. Until that time, the garnisher, in a situation such as this, is only a stakeholder. Only as Grouse Creek's rights to the property as against Budget are determined may there be a judgment against Nevada Title.

We find uncompelling the assertions of error urged in the principal appeal.

## CROSS–APPEAL

I.   Whether the cross-appeal of Budget and Nevada Title should be dismissed because the notice of appeal does not refer to an appealable final judgment or order.

The notice of appeal in the cross-appeal states Budget and Nevada Title "do hereby appeal . . . from the decision . . . in which the court refused to alter and amend its judgment. . . ." As such, it is noticeably defective in that the appeal is from a decision of a final order or judgment, not from the judgment itself. Casino Operations v. Graham, 86 Nev. 764, 476 P.2d 953 (1970).

As in *Casino Operations,* however, we conclude it may be inferred from the notice of appeal and designation of the record that the appeal is from the judgment itself and it may not be said Grouse Creek was misled by the notice. See also Foman v. Davis, 371 U.S. 178 (1962), and Jones v. Chaney & James Construction Co., 399 F.2d 84 (5th Cir. 1968).

II.   Whether Nevada Title, at the time of garnishment, held any property of Westates in which there was a garnishable interest.

In their December 1962 agreement, Budget, Nevada Title and Westates agreed that in the event of certain failures by

Westates, Budget might declare a default and cause Nevada Title to sell at a private foreclosure sale Westates' interest in the pledged property. In October 1963 Budget served such a notice of default and in February 1964 Budget purchased the pledged property at a private foreclosure sale.

Budget devotes much of its briefs to the argument that Westates' actions constituted defaults under the contracts, thereby allowing Budget to foreclose and take sole and absolute title to the pledged property. Because we hold Grouse Creek's rights were established from the time of garnishment in August 1963 we do not reach questions of interpretation of the contracts. We cannot agree with Budget's contention that because of the December 1962 pledge agreement Westates no longer owned any garnishable interest in the pledged property.

The garnishment writ, in the form of NRS 31.260 commanded Nevada Title to "retain possession and control of all personal property, effects and choses in action of Pacific Westates. . . ." It is well-established that even though property may be subject to a pledge agreement it may be reached by timely garnishment. Weir v. Galbraith, 376 P.2d 396 (Ariz. 1962); Axe v. Commercial Credit Corporation, 38 Cal.Rptr. 558 (Cal.App. 1964); Raffo v. Foltz, 288 P. 884 (Cal.App. 1930); Deering v. Richardson-Kimball Co., 41 P. 801 (Cal. 1895); Petition of Upper Peninsula Development Bureau, 110 N.W.2d 709 (Mich. 1961); Kiel Wooden Ware Co. v. Raeder, 7 N.W.2d 414 (Wis. 1943); Annot. 83 A.L.R. 1383 (1933). To rule otherwise in a case such as this would be to allow a creditor to circumvent a lawful garnishment action and possibly recover more than is due, to the detriment of a garnishing creditor.

III. Whether Grouse Creek's failure to traverse Nevada Title's answers to the garnishment requires that it be deemed to admit the answer as true, and therefore Grouse Creek admitted Nevada Title had no property belonging to Westates.

NRS 31.330 requires that the plaintiff-garnishor traverse the answer of the garnishee or be deemed to accept that answer as true. Grouse Creek did not traverse Nevada Title's answer, and for that reason, it is asserted, no issue was joined. Had Nevada Title's answer been merely a denial that it was indebted to Westates or held any property belonging to it, this assertion might be meritorious, but that is not the case here. In its answer Nevada Title acknowledged holding property pursuant to the December 1962 agreement with Budget and Westates, but stated it did not know Westates' interest in the property.

Thus, even in the absence of a traverse by Grouse Creek there remained the triable question of Westates' interest in the property. Grouse Creek took the further necessary steps to ascertain that interest by interpleading Budget under NRS 31.350.

The judgment of the lower court properly determined that as of the date of the garnishment Westates continued to have a garnishable interest in the pledged property. As the garnishor, Grouse Creek became entitled to such part of that property as remained after satisfaction of Budget's prior pledge lien, in satisfaction of its garnishment claim. The accounting which the lower court declined to order pending this appeal should proceed.

The order of the trial court allowing amendments to the findings, conclusions and judgment on the motion of Budget is affirmed; the cross-appeal of Budget requires affirmance and remand to ascertain the amount due and owing from Westates to Budget directly or through Nevada Title, the circumstances and details of the sale including the amount realized therefrom, disposition of the proceeds and security after sale, and such other and further proceedings as deemed warranted by the trial court.

· Affirmed, remanded for the further proceedings consistent with opinion.

BATJER, MOWBRAY, THOMPSON, and GUNDERSON, JJ., concur.