OPINION
 

 Per Curiam:
 

 A
 
 judgment debtor, John Anderson, pledged his shares of Cedar Development Company stock to Eureka Bank to secure payment of the bank’s judgment against him. Union Bank, a third-party judgment creditor, sought to galrnish the rights in the pledged stock retained by Anderson. At issue before us is whether Union Bank may garnish Anderson’s rights in the stock absent proof that surplus value exists over and above the amount of the debt for which the stock is collateral as of the date of garnishment.
 

 In the district court, Union Bank’s attempt to garnish Anderson’s rights in the stock was frustrated, as Eureka Bank persuaded the court to enter summary judgment in its favor on
 
 *952
 
 grounds that surplus value must exist on the date of garnishment. For reasons discussed hereafter, we conclude that the district court erred; we therefore reverse and remand with instructions to reinstate Union Bank’s writ of garnishment.
 

 FACTS
 

 In June 1989, Union Bank obtained a judgment in California against John B. Anderson. The judgment was for an amount in excess of $10,000,000.00. In July 1989, Union Bank domesticated the judgment in Nevada.
 

 In November 1989, Union Bank caused a writ of execution and a writ of garnishment to be served on the law firm of Lionel Sawyer & Collins, the agent for Eureka Bank, who had in its possession shares of Cedar Development Company stock owned by Anderson. Anderson had pledged the stock to Eureka Bank as collateral for the payment of a judgment entered against him in favor of Eureka Bank. Lionel Sawyer & Collins, as Eureka Bank’s agent and garnishee, responded with an answer indicating that the debt owed by Anderson to Eureka Bank was greater than the value of the collateral in its possession.
 

 Eureka Bank was later interpleaded and, jointly with Lionel Sawyer & Collins, moved for summary judgment against Union Bank. The district court granted the motion under the theory that Union Bank had failed to present evidence rebutting Eureka Bank’s evidence that the debt owed to it by Anderson exceeded the value of the collateral. According to the record, the debt owed by Anderson to Eureka Bank is approximately $45,000,000.00, and the value of the Cedar Development Company stock held as collateral is no greater than 10 to 20 percent of that amount.
 

 Union Bank now appeals the order of summary judgment with respondents the Federal Deposit Insurance Corporation and the law firm of Jones, Jones, Close & Brown as successors in interest to Eureka Bank and Lionel Sawyer & Collins.
 
 [1]
 

 DISCUSSION
 

 In Grouse Creek Ranches v. Budget Financial Corp., 87 Nev. 419, 430-31, 488 P.2d 917, 925 (1971), we recognized “that even though property may be subject to a pledge agreement it may be reached by timely garnishment,” and a garnishor is
 
 *953
 
 therefore “entitled to such part of [the pledged] property as remain[s] after satisfaction of [the debt for which the collateral is pledged].” As we also noted in
 
 Grouse Creek Ranches,
 
 “[t]o rule otherwise . . . would be to allow a creditor to circumvent a lawful garnishment action and possibly recover more than is due, to the detriment of a garnishing creditor.”
 
 Id.
 
 The foregoing principle of law is codified in NRS 104.9311, which reads as follows:
 

 The debtor’s rights in collateral may be voluntarily or involuntarily transferred (by way of sale, creation of a security interest, attachment, levy, garnishment or other judicial process) notwithstanding a provision in the security agreement prohibiting any transfer or making the transfer constitute a default.
 

 Union Bank contends that the district court, through an erroneous interpretation of Nevada’s garnishment statutes and our ruling in
 
 Grouse Creek Ranches,
 
 incorrectly required it to prove that the value of the Cedar Development Company stock, on the date the garnishment was levied, exceeded the Eureka Bank debt which the stock secured. Union Bank insists that all rights in collateral retained by a debtor may be garnished, including the right to a commercially reasonable sale upon default and the right to an accounting for any surplus.
 
 See
 
 NRS 104.9504. We agree.
 

 FDIC nevertheless counters that, although Union Bank, standing in the shoes of Anderson, can redeem the stock by paying off Anderson’s debt,
 
 see
 
 NRS 31.400, Union Bank has no greater rights than Anderson relative to the stock, and therefore no garnishment rights. Furthermore, FDIC contends that Margrave v. Craig, 92 Nev. 760, 558 P.2d 623 (1976), and NRS 31.360
 
 [2]
 
 require that the amount of any surplus be fixed, definite, and absolute at the time of garnishment.
 

 In
 
 Margrave,
 
 we held that “[a]t the time of garnishment, the garnishee’s obligation to the defendant must be fixed, definite, and absolute[,]” and that “[a]n obligation which is uncertain or
 
 *954
 
 contingent, in the sense that it might never become due and payable, is not subject to garnishment.”
 
 Margrave,
 
 92 Nev. at 761, 558 P.2d at 624. This, argues FDIC, is an established principle of law reflected in the following C.J.S. excerpt:
 

 The theory on which a lienor may be held to be subject to garnishee process prior to the termination of his qualified ownership is that the question whether or not there will be a surplus may be determined with sufficient certainty by an anticipatory valuation of the property, at least to prevent his discharge as garnishee until the question has been disclosed in the negative by foreclosure;
 
 and on this theory the garnishee cannot be held in the absence of evidence that a surplus will result, or where it appears that there will be no surplus.
 

 38 C.J.S.
 
 Garnishment
 
 § 64 (1943) (footnotes omitted and emphasis added). FDIC notes that Union Bank offered no proof in opposition to Eureka Bank’s motion for summary judgment that a surplus, over and above the estimated $45,000,000.00 debt owed by Anderson, would result. Citing Frontier Federal Savings and Loan Ass’n v. Commercial Bank, N.A., 806 P.2d 1140 (Okla. Ct. App. 1990), FDIC concludes that Union Bank’s claim that it is subrogated to Anderson’s rights, including his right to an accounting and any surplus, is erroneous in light of relevant UCC definitions as discussed more fully below.
 

 We are persuaded that Union Bank advocates a position that is legally sound and fair to both parties.
 
 Grouse Creek Ranches
 
 and NRS 104.9311 clearly support the proposition that Union Bank may garnish Anderson’s net interest in the collateral held by FDIC. Moreover, we perceive no overriding policy consideration supporting FDIC’s contention that surplus value in the collateral must exist on the date of garnishment. Whether or not a surplus exists, FDIC’s interest in the collateral is paramount to Union Bank’s interest; as garnishor, Union Bank’s interest would extend no further than Anderson’s, to which it is subrogated.
 
 See Grouse Creek Ranches,
 
 87 Nev. at 427, 488 P.2d at 923 (a lien creditor stands in no better position concerning the pledgee than does the debtor).
 

 Moreover, the premise stated above is supported in the law. The C.J.S. quotation cited by FDIC above, is augmented as follows:
 

 Under some statutes, it is held that a person in possession of defendant’s property pursuant to hypothecation may be conditionally held as garnishee with the view of reaching the surplus,
 
 if any,
 
 that may be left after the satisfaction of the
 
 *955
 
 secured claim, or, in other words, defendant debtor’s interest or equity of redemption may be reached by such a garnishment.
 

 38 C.J.S.
 
 Garnishment
 
 § 64 (1943) (footnotes omitted and emphasis added);
 
 see
 
 Cox v. Republic Nat. Co., 112 S.W.2d 300, 304 (Tex. Civ. App. 1937);
 
 [3]
 
 Wisconsin Foundry & Machine Co. v. Capital City Canning Co., 223 N.W. 446, "448 (Wis. 1929) (the fact that no surplus exists on the date of garnishment is irrelevant, and garnishor maintains rights in surplus, if any).
 

 NRS 104.9311 provides clear statutory support for a similar application in Nevada. As argued by Union Bank, Anderson has a
 
 right
 
 to an accounting from FDIC for any surplus that may exist upon liquidation of the collateral. According to the plain language of NRS 104.9311, that right may be involuntarily transferred to Union Bank through the garnishment process. In addition, Union Bank as garnishor, standing in the stead of Anderson, may assert all other rights enjoyed by Anderson in connection with his ownership of the collateral and his security agreement with FDIC.
 
 [4]
 

 
 *956
 
 The language of NRS 31.360 simply does not support the contrary argument advanced by FDIC that a garnishor must prove the existence of a surplus on the date of garnishment. Consistent with the principle that a garnishor stands in the shoes of the debtor, NRS 31.360 simply affords a garnishee the right to dedúct out of the property of the debtor, prior to payment to the garnishor, all demands against the debtor, as well as all demands the garnishee has against the garnishor. Furthermore, the record of judgment must disclose the amount of any setoff and the parties against whom the right of any such setoff has been exercised. In any event, FDIC is not obligated to pay anything pursuant to Union Bank’s writ of garnishment until all of FDIC’s claims against Anderson have been fully satisfied.
 

 Equally unavailing to respondents is their reliance on the factually similar case of Frontier Federal Savings and Loan Ass’n v. Commercial Bank, N.A., 806 P.2d 1140 (Okla. Ct. App. 1990). In
 
 Frontier,
 
 a debtor’s property, held as collateral by Commercial Bank, was acquired for an allegedly deflated price by Commercial Bank after the debtor’s default on the underlying debt. Frontier Federal Savings and Loan Association, which had served a garnishment summons on Commercial Bank with respect to the collateral, sought to assert against Commercial Bank the debtor’s right to a commercially reasonable sale. Frontier’s claim was based upon an allegedly perfected lien resulting from service of the garnishment summons on Commercial and the UCC provision, identical to NRS 104.9311, providing for garnishment of a debtor’s rights in collateral. The court held, however, that Frontier could not assert a “debtor’s” right to the
 
 *957
 
 collateral because a “ ‘debtor’, in those instances where it may be someone other than the one who owes payment,” must be the
 
 owner
 
 of the collateral.
 
 [5]
 

 Id.
 
 at 1142. Because Frontier did not take title to the collateral, making it the
 
 owner
 
 of the collateral, Frontier was not a “debtor” and could not assert the rights of a debtor in the garnishment action.
 
 Id.
 

 The
 
 Frontier
 
 court’s logic, in our opinion, is seriously flawed. According to NRS 104.9311, a debtor’s rights in collateral may be involuntarily transferred by garnishment. Requiring a garnishor to first take title to collateral held by a secured creditor so as to assert rights as a “debtor” denies meaning to the applicable garnishment statutes and circumvents the principles of garnishment and subrogation. When Union Bank garnished Anderson’s rights in the collateral held by FDIC, Anderson continued to be the “debtor” and the “owner” of the collateral. NRS 104.9105(1)(d) has no application to this matter, as Union Bank, by virtue of its garnishment, simply acquired the power to assert Anderson’s rights, as debtor.
 

 It is unclear why FDIC has opposed Union Bank’s efforts to garnish Anderson’s rights in the Cedar Development Company stock. FDIC stands to lose nothing, because, if the proceeds of a commercially reasonable sale are insufficient to satisfy the debt owed to FDIC, Union Bank will receive no benefit from the sale of the stock. FDIC may fear Union Bank’s assertion of Anderson’s various rights as a debtor, but, upon execution of Union Bank’s writ of garnishment, FDIC suffered no change in the extent of its obligations to the debtor.
 

 CONCLUSION
 

 For the foregoing reasons, we conclude that the district court erred in granting summary judgment against Union Bank. We therefore reverse the district court’s order of summary judgment and remand with instructions to reinstate Union Bank’s writ of garnishment.
 
 [6]
 

 [1]
 

 On June 10, 1994, this court entered an order granting the stipulated motion of Eureka Bank and its agent, Lionel Sawyer & Collins, the original defendants and respondents in this action, to withdraw and substitute the Federal Deposit Insurance Corporation and Jones, Jones, Close & Brown, respectively, in their places. The current respondents are hereinafter referred to collectively as “FDIC.”
 

 [2]
 

 NRS 31.360 reads:
 

 Every garnishee shall be allowed to retain or deduct out of the property, effects or credits of the defendant in his hands all demands against the plaintiff and all demands against the defendant of which he could have availed himself if he had not been summoned as garnishee, whether the same are at the time due or not, and
 
 he shall be liable for the balance,
 
 only after all mutual demands between himself and plaintiff and defendant are adjusted, not including unliquidated damages for wrongs and injuries; but the verdict or finding as well as the record of the judgment shall show in all cases against which party,
 
 and the amount thereof,
 
 any counterclaim shall be allowed, if any shall be allowed.
 

 (Emphasis added.)
 

 [3]
 

 In
 
 Cox,
 
 the debtor (Mitchell) pledged to the defendant company shares of stock to secure the payment of a note. The court held, concerning Cox’s attempt to garnish the debtor’s interest in the stock:
 

 It will be observed that the garnishment judgment, and the subsequent levy and sale, only covered the right, title, and interest of Mitchell in the shares of stock. Clearly his interest was limited to any excess in the value thereof, if any, over and above a sufficient amount to pay the indebtedness for which he had assigned the stocks to secure. The garnishor acquired no more rights therein than Mitchell had. He, in elfect, assumed the relation to the shares of stock that Mitchell had at the time the writ was issued. ... “A plaintiff in garnishment is, by virtue of the statute, subrogated to the rights of his debtor against the garnishee. In other words, by strict compliance with our garnishment statutes, a plaintiff in garnishment merely steps into the shoes of his debtor as against the garnishee, and may enforce, as against such garnishee, whatever rights the debtor could have enforced had such debtor been suing the garnishee directly.”
 

 (Citations omitted) (quoting Beggs v. Fite, 106 S.W.2d 1039, 1042 (Tex. 1937)).
 

 [4]
 

 Our ruling in the instant case is not in conflict with our direction in
 
 Margrave
 
 that, at the time of garnishment, the garnishee’s obligation to the defendant must be fixed, definite, and absolute. Here, FDIC’s “obligation” is to account for, and pay to Anderson or his subrogee, any excess sum of money remaining after the proceeds of the sale of the pledged stock have been applied toward the satisfaction of FDIC’s judgment against Anderson. Therefore, FDIC’s obligations, including the obligation to account to Anderson for any surplus, are fixed. As explained in C.J.S.:
 

 [The practice of garnishing a future surplus] has been held not to run counter to the doctrine that garnishment is unavailable to reach uncertain or contingent claims ....
 

 
 *956
 
 In order to defeat garnishment the uncertainty of the obligation must be real, and not merely apparent. The contingency must affect the actual liability of the garnishee and be such as may prevent defendant from having any claim whatever against the garnishee
 
 or right to call him to an accounting,
 
 and not merely the title to the property in possession of the garnishee, or his liability on an existing obligation, the force and effect of which may be in dispute between defendant and garnishee.
 
 So the possibility that a future state of things may arise before the day of payment which will create a defense against the recovery of the debt, which circumstances, however, may never arise, does not render the debt contingent.
 

 . .
 
 . Where there is no contingency as to the garnishee’s liability, the only contingency being as to the amount thereof, and where the amount of the liability is capable of definite ascertainment in the future, there is no such contingency as prevents garnishment of the claim, even though, it has been held, it may be that eventually it will be found that nothing is due.
 

 38 C.J.S.
 
 Garnishment
 
 §§ 64, 87 (1943) (footnotes omitted and emphasis added).
 

 [5]
 

 The provision defining “debtor” before the
 
 Frontier
 
 court is virtually identical to NRS 104.9105(d), which reads:
 

 “Debtor” means the person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral, and includes the seller of accounts or chattel paper. Where the debtor and the owner of the collateral are not the same person, the term “debtor” means the owner of the collateral in any provision of the article dealing with the collateral. . . .
 

 [6]
 

 The Honorable Cliff Young, Justice, voluntarily recused himself from participation in the decision of this appeal.