FRED W. CARRILLO, Appellant, v. VALLEY BANK OF NEVADA, a Nevada Banking Corporation, Respondent.

No. 17394

March 31, 1987                                    734 P.2d 724

*Lionel Sawyer & Collins* and *Todd M. Touton*, Las Vegas, for Appellant.

*Jones, Jones, Close & Brown, John E. Leach* and *Michael E. Buckley*, Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

Valley Bank of Nevada (Valley Bank or the Bank) sued Carrillo for the balance due on a promissory note. The lower court entered summary judgment in favor of the Bank. For reasons hereafter specified, we reverse.

In February 1981, Carrillo, a joint venturer with Tonopah Enterprises, executed a one-year lease with an option to purchase the OK Corral Inn (the property) in Tonopah. Thereafter, Carrillo obtained a construction loan for approximately $350,000 from Valley Bank. The loan was secured by a trust deed on Carrillo's leasehold interest in the property, and the loan proceeds were

used to make improvements on the property. Eventually, the joint venture exercised its option to purchase and acquired the property. The sellers demanded and received a first deed of trust on the property securing a debt of $400,000. Valley Bank agreed to subordinate its deed of trust to the purchase money deed of trust. Shortly thereafter, the joint venture defaulted on both the first and second deeds of trust.

A trustee's sale was scheduled pursuant to the beneficiary's rights under the first deed of trust. At that sale, the beneficiary bid in the amount owing on its note; Valley Bank submitted a bid for an additional dollar, thereby acquiring the property for $466,093.67.

Valley Bank contends that the net effect of the trustee's sale was nullification of its second trust deed and a corresponding right to recover the full remaining balance of the Carrillo promissory note irrespective of the fair market value of the secured property it acquired. The district court agreed and entered summary judgment in favor of Valley Bank and against Carrillo in the amount of $283,688.18, together with interest, costs and attorney's fees.

The property was appraised in August, 1981, at approximately $2,050,000. In February 1984, Valley Bank obtained a second appraisal of $1,170,000. Carrillo maintains that Nevada's deficiency statutes, NRS 40.457 and 40.459, ought to apply to Valley Bank in the instant case because of the potential for a double recovery. *See* Crowell v. Hancock, 102 Nev. 640, 731 P.2d 346 (1986); First Interstate Bank v. Shields, 102 Nev. 616, 730 P.2d 429 (1986). Of course, a double recovery would occur if Valley Bank realized the full balance of the Carrillo note in addition to property valued in excess of the combined indebtedness represented by the first and second trust deeds.

Valley Bank insists that the trustee's sale extinguished its security interest in the property and left the Bank in the position of a sold-out junior lienor. Endorsement of such a view would truly exalt form over substance in disregard of reality. The Bank, in fact, preserved its security by acquiring the property at the sale. It could have elected not to participate in the sale, thereby losing its security interest. Thereafter, it could have pursued its remedy against Carrillo on the promissory note. In so doing, the Bank would have enjoyed the status it now claims. The Bank could not restructure the equation to produce a return greater than its full entitlement by treating the property and Carrillo's promissory note as unrelated factors. It is the policy of Nevada law, under *First Interstate Bank* and *Crowell,* not to countenance such an approach. Valley Bank nevertheless contends that McMillan v. United Mortgage Co., 84 Nev. 99, 101, 437 P.2d 878, 879 (1968), is dispositive in exempting sold-out junior lienors from

Nevada's deficiency statutes. First, as previously observed, we do not consider Valley Bank to be a sold-out junior lienor in spite of the legal effect of the trustee's sale in extinguishing the Bank's second trust deed. The Bank as a purchaser did not lose its expectations concerning the property as a source of debt satisfaction. Second, to the extent *McMillan* is inconsistent with our instant holding, it is disapproved.

Today's ruling is not without support in other jurisdictions, Walter E. Heller Western, Inc. v. Bloxham, 221 Cal.Rptr. 425 (Ct.App. 1985); Bank of Hemet v. United States, 643 F.2d 661 (9th Cir. 1981). Both decisions differentiated between a sold-out junior lienor and a junior lienor who purchases the property at a trustee's sale initiated by a senior lienholder. In the latter situation, the creditor is permitted resort to a deficiency judgment only to the extent the combined debts exceed the fair market value of the property. We adopt the same rule for Nevada, as it fully comports with the public policy of this State.

The California statutes concerning deficiency judgments parallel our own. As the *Heller* court observed:

> [O]nce a junior chooses to purchase, it is equitable to apply the fair value limitations to him. Any loss to him as creditor by his own underbidding is gained by him as a purchaser for a bargain price. . . . "To so limit the deficiency judgment right is . . . to protect against a lienor buying in the property at a deflated price, obtaining a deficiency judgment, and achieving a recovery in excess of the debt by reselling the property at a profit. . . . [¶]. . . The unmistakable policy of California is to prevent excess recoveries by secured creditors." *Id.* at 429–30.

The policy affirmations of *Heller* and *Bank of Hemet* coincide with the expressions of this court in *First Interstate Bank* and *Crowell.* All are consistent with our holding in the instant case.

The trial court, having agreed that the Bank was a sold-out junior lienor, entered summary judgment against Carrillo on his note. There has been no judicial determination of the fair market value of the property as of the date of the trustee's sale. Moreover, the statutory period for seeking a deficiency judgment has long since expired. Nevertheless, it would be unfair to reverse the Bank's judgment and leave it without a remedy, a predicament that clairvoyance alone could have avoided. Similarly, it would be inequitable to penalize Carrillo's foresight and diligence with a vindication made hollow by an ongoing interest meter. Clearly, if the Bank had assumed the more equitable stance reflected by this opinion, the extent of Carrillo's liability would have been determined at a much earlier date as contemplated by our deficiency statutes. Accordingly, we reinstate the Bank's remedy but

disallow interest on the promissory note from the date of entry of the erroneous summary judgment. Of course, if the fair market value of the property on the date of the trustee's sale is determined to be greater than the combined debts represented by the first and second trust deeds, the issue will be moot as there could be no deficiency judgment.

The summary judgment is reversed and remanded for further proceedings consistent with this opinion.[1]

---

[1]The proper procedure for a purchasing junior lienor to follow in seeking a deficiency judgment is set forth in NRS 40.455. The purchasing junior has three months from the date of the trustee's sale within which to file an action for such a judgment. The provisions of NRS 40.457 and NRS 40.459 apply to purchasing juniors seeking to establish and reduce a deficiency to judgment. However, the three-month application period will be tolled in the instant action until this court's remittitur is issued.