**Virginia J. ADAMS, Appellant,**

v.

**FedALASKA FEDERAL CREDIT UNION, Appellee.**

No. S–2018.

Supreme Court of Alaska.

June 24, 1988.

---

Ronald A. Offret, Aglietti, Pennington & Rodey, Anchorage, for appellant.

David D. Clark and Colleen J. Murphy, Cummings, Clark & Tugman, Anchorage, for appellee.

Before RABINOWITZ and COMPTON, JJ., and BRYNER, J. Pro Tem.*

## OPINION

COMPTON, Justice.

This case raises issues concerning collection on a note secured by a second deed of trust.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In April 1983, Virginia Adams signed a promissory note in favor of FedAlaska Federal Credit Union (FedAlaska) for $36,250 plus interest. Concurrently, as security for the loan, Adams signed a deed of trust naming FedAlaska beneficiary. The deed of trust was a second deed of trust on the property. This loan was purportedly for property renovation, but that renovation was never completed. In 1985 FedAlaska advanced an additional $19,939.12 to Adams to forestall a foreclosure of the property under the first deed of trust. Fe-

dAlaska added the advance to Adams' loan account pursuant to the terms of the deed of trust. In January 1984, Adams transferred the property, which was still subject to the two deeds of trust, to a third party, Patrick McCourt, in satisfaction of a dispute between Adams and McCourt. In March 1986, the property was sold at a nonjudicial foreclosure sale pursuant to default on the first deed of trust. The property was purchased at the sale by FedAlaska for $191,000, an amount just over what was owed on the first deed of trust. FedAlaska resold the property shortly thereafter for $265,000.

On April 29, 1986, FedAlaska filed suit against Adams on the promissory note, which was in default. Upon motion by FedAlaska, the trial court ordered a writ of attachment be issued. Pursuant to that writ, FedAlaska attached $1,883.78 in Adams' bank accounts found at Alaska USA Federal Credit Union and Alaska Mutual Bank. Summary judgment was also granted in favor of FedAlaska on all counts of its complaint. Adams appeals both the summary judgment and the attachment. We affirm.

## II. DISCUSSION

### A. THE TRIAL COURT DID NOT ERR IN HOLDING ADAMS PERSONALLY LIABLE FOR THE MONEY DUE ON THE NOTE.

In reviewing motions for summary judgment granted by the trial court, this court may make a independent review to determine whether any issue of material fact remained to be litigated. *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274 (Alaska 1985); *Alaska Rent-A-Car, Inc. v. Ford Motor Co.*, 526 P.2d 1136 (Alaska 1974).

■ Under Alaska statutes, the trustee of a deed of trust may foreclose and sell the property which has been pledged as security for an indebtedness without first securing a decree of foreclosure from the

* Bryner, Court of Appeals Chief Judge, sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

court. AS 34.20.070. Upon selling the property the interests created subsequent to the deed, including those of junior lien-holders, are cut off. AS 34.20.090; *Burnett, Waldock & Padgett Inv. v. C.B.S. Realty*, 668 P.2d 819, 822–23 (Alaska 1983). Thus, as FedAlaska argues, a strict reading of the statutes shows that upon sale by the senior lienholder, FedAlaska, the junior lienholder, lost its security interest in the property. The statutes contain no exception to this rule when the purchaser at a sale is a junior lienholder.

California and Nevada have judicially recognized such an exception. The reasoning of these courts is simple and can be stated by a brief excerpt from *Carrillo v. Valley Bank of Nevada*, 734 P.2d 724, 725 (Nevada 1987):

> Valley Bank insists that the trustee's sale extinguished its security interest in the property and left the Bank in the position of a sold-out junior lienor. Endorsement of such a view would truly exalt form over substance in disregard of reality. The Bank, in fact, preserved its security by acquiring the property at the sale. It could have elected not to participate in the sale, thereby losing its security interest. Thereafter, it could have pursued its remedy against Carrillo on the promissory note. In so doing, the Bank would have enjoyed the status it now claims. The Bank could not restructure the equation to produce a return greater than its full entitlement by treating the property and Carrillo's promissory note as unrelated factors.

The Nevada court thought it unfair for a lienholder to get both a judgment on the note and the security for the note, by whatever means.

Unlike Alaska, however, Nevada expressly allows junior lienholders to receive deficiency judgments when purchasing their security. Nev.Rev.Stat. § 40.455 (1985). Statutes limit the deficiency judgment to no more than the difference between the fair market value of the property and the amount of the indebtedness. Nev.Rev. Stat. §§ 40.457, .459 (1985). Thus, the Nevada policy is to allow the security holder a variety of means by which to obtain repayment, while at the same time preventing him from receiving more than the total value of his debt. In *Carrillo*, the Nevada court held that to allow a junior lienholder to profit by acquisition of the property and also receive the full value of the loan would subvert this policy. *See Carrillo*, 734 P.2d at 725; *see also Crowell v. John Hancock Mut. Life Ins. Co.*, 731 P.2d 346 (Nevada 1986) (guarantors not liable to creditor for deficiency where, after the trustee's sale, property's fair market value exceeded value of debt); *First Interstate Bank of Nevada v. Shields*, 730 P.2d 429 (Nevada 1986) (guarantors entitled to protection of deficiency legislation).

California also prohibits suit by junior lienholders on their note in certain circumstances. The California experience may be more apposite than Nevada's because its statutory scheme more closely resembles Alaska's. Like Alaska, the California statute prohibits lienholders who sell at non-judicial sales or who foreclose on purchase money trust deeds from pursuing deficiency actions.[1] The California Supreme Court

---

1. Cal.Civ.Proc.Code § 580b (West 1976) provides:

 No deficiency judgment shall lie in any event after any sale of real property for failure of the purchaser to complete his contract of sale, or under a deed of trust, or mortgage, given to the vendor to secure payment of the balance of the purchase price of real property, or under a deed of trust, or mortgage, on a dwelling for not more than four families given to a lender to secure repayment of a loan which was in fact used to pay all or part of the purchase price of such dwelling occupied, entirely or in part, by the purchaser.

 Where both a chattel mortgage and a deed of trust or mortgage have been given to secure payment of the balance of the combined purchase price of both real and personal property, no deficiency judgment shall lie at any time under any one thereof if no deficiency judgment would lie under the deed of trust or mortgage on real property.

 Cal.Civ.Proc.Code § 580d (West 1976) provides:

 No judgment shall be rendered for any deficiency upon a note secured by a deed of trust or mortgage upon real property hereafter executed in any case in which the real property has been sold by the mortgagee or trustee under power of sale contained in such mortgage or deed of trust.

has broadly defined deficiency actions. In *Brown v. Jensen*, 41 Cal.2d 193, 259 P.2d 425, 427 (1953) *cert. denied* 347 U.S. 905, 74 S.Ct. 430, 98 L.Ed. 1064 (1954), the court held that "a deficiency is no more than the difference between the security and the debt." Under this rule a junior purchase money security holder was prohibited from suing on its note when the security was foreclosed by a senior security holder. *Id.*

Commentators, however, criticize this holding as too broad, effectively preventing juniors from ever collecting their debt once the investment had soured because the *Brown* rule sets value of the security at the time of the original sale. *See* G. Osborne, G. Nelson, & D. Whitman, *Real Estate Financing Law* 533–34 (1979). Realizing the equity inherent in the holding was not universally applicable, *Brown* has been limited by the California court. In *Roseleaf Corp. v. Chierighino*, 59 Cal.2d 35, 27 Cal.Rptr. 873, 378 P.2d 97 (1963), the California Supreme Court clarified the *Brown* rule, limiting its application to junior lienholders of standard purchase money trust deeds. The California court also held *Brown* did not apply where the purchaser intends to develop the property and considerably increase its value, because the present security value would not be a reliable indicator of the ultimate value. *Span-*

*gler v. Memel*, 7 Cal.3d 603, 102 Cal.Rptr. 807, 498 P.2d 1055, 1059–61 (1972).

In *Walter E. Heller Western, Inc. v. Bloxham*, 176 Cal.App.3d 266, 221 Cal. Rptr. 425 (1985), a California court of appeal held that where a junior lienholder purchased at the senior's sale, and was able to sue for a deficiency, the deficiency judgment would be limited to the difference between the debt owed and the fair market value of the property.[2] The court recognized that "[t]he junior's right to recover should not be controlled by the whim of the senior." *Walter E. Heller Western*, 221 Cal.Rptr. at 428 (quoting *Roseleaf Corp.*, 378 P.2d at 97). "However, once a junior chooses to purchase, it is equitable to apply the fair value limitations to him." *Id.* at 429.

This court cannot follow the lead of either Nevada or California without excessive intrusion into the province of the legislature. Both Nevada and California have fair market value legislation.[3] In addition, as discussed above, the judicial gloss necessary to make California's system practicable is cumbersome. It would be even more cumbersome in Alaska because this state lacks California's legislative foundation.

Finally, there is a strong argument against the position of the California court. That is, if the Alaska law is strictly followed, the position of Adams is no differ-

2. Cal.Civ.Proc.Code § 580a (West Supp.1986) provides:

> Whenever a money judgment is sought for the balance due upon an obligation for the payment of which a deed of trust or mortgage with power of sale upon real property or any interest therein was given as security, following the exercise of the power of sale in such deed of trust or mortgage, the plaintiff shall set forth in his complaint the entire amount of the indebtedness which was secured by said deed of trust or mortgage at the time of sale, the amount for which such real property or interest therein was sold and the fair market value thereof at the date of sale and the date of such sale. Upon the application of either party made at least 10 days before the time of trial the court shall, and upon its own motion the court at any time may, appoint one of the probate tax referees provided for by law to appraise the property or the interest therein sold as of the time of sale. Such referee shall file his appraisal with the clerk and the same shall be admissible in evi-

dence.... Before rendering any judgment the court shall find the fair market value of the real property, or interest therein sold, at the time of sale. The court may render judgment for not more than the amount by which the entire amount of the indebtedness due at the time of sale exceeded the fair market value of the real property or interest therein sold at the time of sale with interest thereon from the date of the sale; provided, however, that in no event shall the amount of said judgment, exclusive of interest after the date of sale, exceed the difference between the amount for which the property was sold and the entire amount of the indebtedness secured by said deed of trust or mortgage.

3. *Compare* Cal.Civ.Proc.Code §§ 580a–d (West 1976 and Supp.1986) *and* Nev.Rev.Stat. § 40.457 (1985) (providing for hearing and taking of evidence concerning fair market value of property sold and notice to all defendants against whom deficiency judgment is sought) *with* AS 34.20.-070–.135.

ent whether FedAlaska or a third party buys the property. In either case FedAlaska would lose its security and Adams would be personally liable for the note. Under the approach argued by Adams, Adams fortuitously benefits by FedAlaska's purchase. And it is FedAlaska that assumes the risk of reselling the land for the value of the security. If FedAlaska's attempt to collect on the loan were to be characterized a deficiency judgment and therefore prohibited, FedAlaska would be required to assume this risk. The junior is not so burdened in Nevada where a deficiency judgment is allowed.[4]

Therefore we hold that a junior lienholder loses its security interest as a result of a senior lienholder's foreclosure and sale, even where the junior is the purchaser at the sale.

### B. THE TRIAL COURT PROPERLY GRANTED THE PREJUDGMENT WRIT OF ATTACHMENT.

 Alaska statutes prohibit the granting of a prejudgment writ of attachment when the debt is secured and the security is adequate to satisfy the judgment. Alaska R.Civ.P. 89(b)(3). Therefore, if FedAlaska's security interest continued in the property then a prejudgment writ would have been inappropriate. However, because we hold that FedAlaska no longer had a security interest on which to foreclose, the trial court's grant of a prejudgment writ of attachment was correct.

### III. CONCLUSION

For the reasons stated above, the decision of the trial court is AFFIRMED.

MATTHEWS, C.J., and BURKE and MOORE, JJ., not participating.

BRYNER, Justice, Pro Tem., dissenting.

In the present case, FedAlaska, the holder of a second mortgage, purchased the property secured by the mortgage at a nonjudicial foreclosure sale conducted by the holder of the first mortgage; it then immediately resold the property for a sum that was entirely sufficient to satisfy the amount due on Adams' promissory note. It is wholly unrealistic, under these circumstances, to view FedAlaska's purchase and sale as being unrelated to the repayment of Adams' promissory note, and it seems strikingly unfair to allow FedAlaska to sue and recover separately on the underlying obligation.

In a typical real estate mortgage and loan transaction, the fair market value of the mortgaged property serves to protect the legitimate interests of both borrower and lender. On the one hand, the lender is protected against default by the right of foreclosure and sale. On the other hand, the borrower may reasonably look to the value of the mortgaged property for protection against catastrophic financial loss in the event of default. Our property code seeks to promote the legitimate interests of both borrower and lender by striking a careful balance between the lender's right to recover the property in the event of a default and the borrower's right to receive the benefit of the value of the property upon its foreclosure.

The rule adopted by the court today effectively upsets this balance. It allows junior lienholders to do indirectly that which would be prohibited if done directly. Had FedAlaska nonjudicially foreclosed on and sold the secured property, it could not have sued Adams on the underlying promissory note. *See* AS 34.20.100. The cost of giving junior lienholders this right will inevitably be a significant reduction in the ability of borrowers to rely on the fair market value of their property as protection in the event of a default. This cost could readily be avoided, without significant impairment to the legitimate interests of junior lien-

---

4. Adams also argues that FedAlaska is prohibited from buying the property as an investment under Federal Credit Union regulations. She concludes that FedAlaska therefore must have purchased the property to protect its security and that this recognition of FedAlaska's security interest somehow adds weight to her arguments. In addition to the tangential nature of this argument, we are unpersuaded that Adams has standing under the relevant federal regulations to challenge FedAlaska's actions.

holders, by following the California[1] and Nevada[2] cases.

The majority of the court declines to do so, yet none of the reasons it relies on is convincing. Differences between the statutory scheme in Alaska and those in California and Nevada do not militate against the approach taken in those states. To the extent that Alaska's property laws differ in any relevant way, they appear to be more protective of borrowers' rights than are the laws of California and Nevada. Statutory differences thus hardly justify rigid and inflexible adherence to a rule that would in effect permit double recovery by lenders. Contrary to the view expressed in the majority's opinion, this case presents no unusually difficult problem of statutory construction. The "judicial gloss" involved in following the California and Nevada cases appears to be no more "cumbersome" than a multitude of comparable glosses routinely relied on by this court—and any appellate court, for that matter—in the usual course of performing its duty to determine the scope and meaning of statutory language. Nor is the concept of fair market value so novel or complex as to be unworkable in the absence of express statutory implementation.

In short, I believe that the majority's inflexible adherence to an unfair rule is both unnecessary and ill-advised. Accordingly, I disagree with the court's opinion. I would instead follow the approach taken by the courts of both California and Nevada—an approach that seems eminently sensible. While I would not altogether bar the holder of a second mortgage from recovering on the underlying obligation after electing to buy the secured property, I would permit recovery only to the extent that the fair market value of the secured property at the time of purchase is inadequate to cover the amount due on the obligation.

1. *See Walter E. Heller Western, Inc. v. Bloxham,* 176 Cal.App.3d 266, 221 Cal.Rptr. 425 (1985).

2. *See Carrillo v. Valley Bank of Nevada,* 734 P.2d 724, 725 (Nev.1987).