**130 Nev., Advance Opinion 38**
IN THE SUPREME COURT OF THE STATE OF NEVADA

SIMON LAVI,
Petitioner,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
VALERIE ADAIR, DISTRICT JUDGE,
Respondents,
  and
BRANCH BANKING AND TRUST
COMPANY, SUCCESSOR-IN-
INTEREST TO COLONIAL BANK BY
ACQUISITION OF ASSETS FROM THE
FDIC AS RECEIVER FOR COLONIAL
BANK, A NORTH CAROLINA
BANKING CORPORATION
ORGANIZED AND IN GOOD
STANDING UNDER THE LAWS OF
NORTH CAROLINA,
Real Party in Interest.

No. 58968

**FILED**

MAY 29 2014



TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Petition for rehearing of this court's May 24, 2013, order granting a petition for a writ of mandamus and directing the district court to award summary judgment to petitioner in a breach of guaranty action.

*Rehearing denied.*

Marquis Aurbach Coffing and Frank M. Flansburg, III, and Jason M. Gerber, Las Vegas; Baker & Hostetler LLP and Michael Matthias, Los Angeles, California,
for Petitioner.

SUPREME COURT
OF
NEVADA

(O) 1947A

8/29/14: Corrected per Letter to publishers. CJ

14 - 17306

Sylvester & Polednak, Ltd., and Allyson R. Noto and Jeffrey R. Sylvester, Las Vegas,
for Real Parties in Interest.

BEFORE THE COURT EN BANC.

## OPINION

By the Court, DOUGLAS, J.:

Real party in interest Branch Banking and Trust Company (BB&T) has petitioned for rehearing of our earlier decision to grant a writ of mandamus in this case, based on the district court's failure to dismiss a breach of guaranty action after the property securing the underlying commercial real estate loan was sold at a trustee's sale. In that order, we concluded that BB&T was barred from recovering under the guaranty because it failed to apply for a deficiency judgment under NRS 40.455 within six months after the property's sale. On rehearing, BB&T asserts that we misapprehended the legal effect of the guarantor's waiver of certain statutory protections under NRS 40.430, otherwise known as the one-action rule. BB&T argues that the waiver effectively nullified NRS 40.455's requirements. We deny rehearing because we considered and resolved BB&T's arguments in our order granting mandamus relief, and because we are not convinced that we misread or misapplied the pertinent law.

## FACTS

In addition to others not party to this proceeding, petitioner Simon Lavi personally guaranteed a commercial real estate loan that

SUPREME COURT
OF
NEVADA

(O) 1947A

2

BB&T eventually purchased. After the borrowers defaulted on the loan, BB&T filed a complaint seeking full recovery of the loan's balance from Lavi and the other guarantors. While the case against the guarantors was pending, BB&T foreclosed and took ownership of the property through a credit bid at a trustee's sale. At that time, the property was worth less than what the borrowers owed BB&T under the loan.

Nearly one year later, BB&T moved for summary judgment regarding Lavi's liability for breach of the loan guaranty. In response, Lavi filed a countermotion for summary judgment, asserting that NRS 40.455 precluded BB&T from obtaining a judgment for the deficiency on the loan balance arising after the trustee's sale. In pertinent part, NRS 40.455 requires a party who is seeking a deficiency judgment to file an application for the judgment within six months after the trustee's sale. The district court determined that NRS 40.455 did not bar BB&T's action because BB&T sufficiently notified Lavi that it intended to seek a deficiency judgment. Accordingly, the district court granted BB&T's motion for summary judgment as to Lavi's liability and denied Lavi's countermotion.

Lavi then filed a petition for a writ of mandamus or a writ of prohibition in this court, challenging the district court's order. Lavi asserted that BB&T was barred from recovering a deficiency judgment because BB&T did not apply for it within six months after the trustee's sale. We agreed and issued a writ of mandamus compelling the district court to dismiss the guaranty action against Lavi. BB&T has now petitioned this court for rehearing of our decision.

 

## DISCUSSION

Under NRAP 40(c)(2), this court may consider petitions for rehearing when "a material fact in the record or a material question of law in the case" has been overlooked or misapprehended, or when we have misapplied a controlling decision. A petition for rehearing will not be considered when it raises a point for the first time, or when it merely reargues matters previously presented to the court. NRAP 40(c)(1).

Our order granting the writ of mandamus was based on the conclusion that per NRS 40.455 and *Walters v. Eighth Judicial District Court*, 127 Nev. ___, 263 P.3d 231 (2011), a party seeking a deficiency judgment must file the application particularizing the reasons for the requested judgment within six months after selling the property at a trustee's sale, regardless of any purported waiver of the one-action rule. We explained that under NRS 40.495(3), Lavi was allowed to assert BB&T's failure to comply with NRS 40.455 as a defense to the breach of guaranty action. In *Walters*, a lender filed a summary judgment motion on a breach of guaranty claim, seeking to recover the unpaid balance on a loan, after the lender sold the real property that secured the loan at a trustee's sale. *Id.* at ___, 263 P.3d at 232-33. There, we considered whether the lender's failure to apply for a deficiency judgment within six months after the trustee's sale entitled a guarantor, who waived the one-action rule, to partial summary judgment. *Id.* at ___, 263 P.3d at 233. Ultimately, we concluded—without addressing the waiver issue—that the summary judgment motion in *Walters* sufficed as an application for a default judgment because it was written, set forth the particular grounds for the relief sought, and was filed within NRS 40.455(1)'s six-month time frame after the trustee's sale. *Id.* at ___, 263 P.3d at 234.

In seeking rehearing of our decision, BB&T argues that we mistook the applicability of both NRS 40.495(3) and *Walters* to this case. According to BB&T, when Lavi waived the one-action rule, he also released BB&T from the obligation of satisfying NRS 40.455. BB&T also argues that *Walters* does not control here because, in that case, we expressly refused to consider whether any waiver of the one-action rule impacted NRS 40.455's applicability. BB&T's arguments are meritless because we neither misunderstood nor ignored these authorities. Nevertheless, we issue this opinion addressing BB&T's rehearing petition because our explanation may prove useful beyond the facts of this case. NRAP 36(c)(3).

Generally, "there may be but one action for the recovery of any debt, or for the enforcement of any right secured by a mortgage or other lien upon real estate. That action must be in accordance with the provisions of NRS 40.430 to 40.459, inclusive." NRS 40.430(1). We have interpreted this statute to require an obligee, who seeks to recover a debt secured by real property, to recover on the property through foreclosure before attempting to recover from the loan's guarantor personally. *See McDonald v. D.P. Alexander & Las Vegas Boulevard, L.L.C.*, 121 Nev. 812, 816, 123 P.3d 748, 750 (2005). If a guarantor waives the NRS 40.430 protections, the obligee may maintain an action to recover from the guarantor prior to completing the foreclosure process. *See* NRS 40.495(2). BB&T's interpretation that waiving the one-action rule also frees an obligee from complying with the provisions of NRS 40.455 is unreasonable. NRS 40.495(2) focuses on maintaining a separate action; nothing in the subsection implies that it also terminates the procedural requirements for that action.

Additionally, NRS 40.495(3) allows a guarantor to assert any defenses provided under NRS 40.451 to 40.4639 if an "obligee maintains an action to foreclose or otherwise enforce a mortgage or lien and the indebtedness or obligations secured thereby." In our order granting Lavi's petition, the dissent suggested that allowing a guarantor to assert a defense against a breach of guaranty claim based on the obligee's foreclosure action effectively reads "separately and independently" out of NRS 40.495(2). The dissent's concerns are reasonable, but unjustified. If an obligee seeks a deficiency judgment from a guarantor in an action separate from a foreclosure action, the two actions are undeniably and inextricably connected because the foreclosure sale necessarily impacts the deficiency judgment award. *See Carrillo v. Valley Bank of Nev.*, 103 Nev. 157, 159, 734 P.2d 724, 725 (1987) (a party who buys a property at foreclosure may seek a deficiency judgment only to the extent that the debts exceed the property's fair market value). If we disregard this fact, a party could possibly receive an excess recovery. *See id.* Also, the Legislature has shown a strong inclination towards protecting an obligor's rights under the antideficiency statutes. *See Lowe Enters. Residential Partners, L.P. v. Eighth Judicial Dist. Court*, 118 Nev. 92, 103-04, 40 P.3d 405, 412-13 (2002). Allowing a guarantor to assert a defense to a deficiency action is consistent with both legislative intent and NRS 40.495(2) because it preserves the obligor's rights under the antideficiency statutes and it does not prevent an obligee from maintaining that action separately from a foreclosure action. Further, this interpretation can be fairly harmonized with NRS 40.495's 2011 amendment adding subsection 4. The subsection does not deny applicability of the deficiency judgment defenses or the six-month deadline; rather, it governs the amount due

from the guarantor and implements a fair market value determination regardless of whether the property has been foreclosed. *See* 2011 Nev. Stat., ch. 311, § 5.5, at 1743-44.

When Lavi waived the one-rule action, BB&T was allowed to bring an action against him prior to completing the foreclosure on the secured property, but that waiver did not terminate the procedural requirements for asserting that separate action. Although BB&T commenced an action on the guaranty first under NRS 40.495(2), once it foreclosed on the property and sought a deficiency judgment, it was required to satisfy NRS 40.455. Thus, *Walters'* holding that timely application for a deficiency judgment must be made under NRS 40.455 applies here as well. While the guaranty action is being maintained separately from any other action to recover the debt, the defenses against a deficiency judgment nonetheless apply after the property is sold at foreclosure. So, under NRS 40.495(3), Lavi was entitled to raise any defenses to BB&T's attempt to recover a deficiency judgment.

BB&T also asserts that even if *Walters* applies, its complaint met the same standards for being considered a deficiency judgment application as did the pre-foreclosure counterclaim in *Walters*, which the district court in that case concluded sufficed as a deficiency judgment application under NRS 40.455. But, in *Walters*, this court affirmed on the ground that the summary judgment motion met the deadline because it was filed within six months after the foreclosure sale, thus we did not consider the counterclaim argument. *See id.* Here, we have determined



that BB&T's complaint could not have met NRS 40.455's requirements because BB&T filed it before the trustee's sale. A right to deficiency judgment does not vest until the secured property is sold. *Sandpointe Apartments v. Eighth Judicial Dist. Court*, 129 Nev. __, __, 313 P.3d 849, 856 (2013). Therefore, a complaint filed before the foreclosure sale cannot sufficiently put an obligor on notice that the deed of trust beneficiary intends to seek further recovery from the obligor. Accordingly, *Walters* does not provide support for BB&T's rehearing petition.

As explained above, in rendering our decision in this matter we did not overlook, misapprehend, or misapply the law. As a result, rehearing is not warranted. NRAP 40(c). Therefore, we deny BB&T's petition.

_____, J.
Douglas

We concur:

_____, C.J.
Gibbons

_____, J.
Parraguirre

_____, J.
Cherry

_____, J.
Saitta

PICKERING, J., with whom HARDESTY, J., agrees, dissenting:

The majority exonerates Lavi from his unconditional guaranty of a $6,695,000 commercial loan. It does so on the basis that the lender, BB&T, forfeited Lavi's payment guaranty by foreclosing on the real property securing the loan without "appl[ying]" for a "deficiency judgment" against Lavi "within 6 months after the date of the foreclosure sale," as NRS 40.455 would require if this were a one-action rule case. But BB&T had already applied for judgment against Lavi by suing him on the guaranty before it foreclosed, and in the guaranty, Lavi waived the one-action rule, NRS 40.430, as NRS 40.495(2) permits. This took BB&T's suit against Lavi outside the "one action . . . in accordance with the provisions of NRS 40.430 to 40.459, inclusive," that NRS 40.430 describes, and entitled BB&T to proceed to judgment against Lavi "separately and independently from . . . [t]he exercise of any power of sale [and a]ny action to foreclose or otherwise enforce a mortgage or lien and the indebtedness or obligations secured thereby." NRS 40.495(2)(b) & (c).

A lender extends commercial credit with the expectation that the interest to be earned exceeds the risk of default and consequent loss. Where, as here, the borrower is a special-purpose entity formed to buy and develop a specific piece of commercial real estate, the lender often relies on personal guaranties to assure repayment if the real estate does not deliver the value the investors anticipate. Ordinarily, the guarantor is closer to the borrower than the lender and stands to profit beyond the interest a lender may reasonably charge, else there would be no economic incentive for the guaranty. The 6-month period in NRS 40.455 is a statute of limitations, designed to cut off stale post-foreclosure deficiency claims. To exonerate the guarantor, whom the lender sued before the foreclosure sale,

because the lender sued before instead of within 6 months after the foreclosure sale, punishes the diligent lender without statutory basis or policy reason. And because such a rule is not apparent from a natural reading of the applicable statutes, and virtually unprecedented nationally, it impedes Nevada's economic growth and development. Without predictable laws permitting efficient enforcement of commercial guaranties, commercial loans in Nevada will become increasingly expensive and difficult to obtain.

## I.

## A.

Some background is helpful to an understanding of the issues in this case. Nevada's one-action rule, set forth in NRS 40.430, says that "there may be but one action for the recovery of any debt, or for the enforcement of any right secured by a mortgage or other lien upon real estate. That action must be in accordance with the provisions of NRS 40.430 to 40.459, inclusive." NRS 40.430(1). This statute dates back to statehood days, *Hyman v. Kelly*, 1 Nev. 179, 185 (1865), and, in general, requires a lender to proceed against a borrower's pledged security before seeking a deficiency judgment against the borrower, thereby preventing the lender from inflating its recovery with an unfairly low credit bid. *Id.*; *see McDonald v. D.P. Alexander & Las Vegas Blvd., L.L.C.*, 121 Nev. 812, 820, 123 P.3d 748, 753 (2005).

The "provisions of NRS 40.430 to 40.459, inclusive" that define the "one action" NRS 40.430(1) affords include: NRS 40.455, which provides that, "upon application of . . . the beneficiary of the deed of trust within 6 months after the date of . . . the trustee's sale, . . . and after the required hearing, the court shall award a deficiency judgment to the . . . beneficiary of the deed of trust if it appears . . . that there is

a . . . balance remaining due"; NRS 40.457(1), which provides that, "Before awarding a deficiency judgment under NRS 40.455, the court shall hold a hearing and . . . take evidence . . . concerning the fair market value of the property sold as of the date of . . . sale"; and NRS 40.459(1), which limits the recoverable deficiency to the lesser of "the amount by which the [secured indebtedness] exceeds the fair market value of the property sold at the time of the sale" or "the difference between the amount for which the property was actually sold" and the secured indebtedness.

Before 1986, Nevada's one-action rule and its associated protections applied only to borrowers, not guarantors. *Mfrs. & Traders Trust Co. v. Eighth Judicial Dist. Court*, 94 Nev. 551, 554, 583 P.2d 444, 446 (1978) ("a creditor is not required to pursue the maker of the note, or the real property security, before suing the guarantor of a note secured by a mortgage or deed of trust for the full amount of the indebtedness remaining on the note"); *see Coombs v. Heers*, 366 F. Supp. 851, 855 (D. Nev. 1973) ("The rule that a creditor may first pursue an absolute guarantor has not been abrogated by any Nevada case and the only Nevada decision approaching the subject approves the rule." (citing *Quillen v. Quigley*, 14 Nev. 215, 218-20 (1879))); 2 Michael T. Madison, Jeffry R. Dwyer & Steven W. Bender, *The Law of Real Estate Financing* § 15:12 (2013) (few states have one-action rules; the majority of courts in those that do "have concluded that the applicable one-action statute [does] not protect guarantors"). This makes economic sense, because if the lender forecloses on a borrower's security, the guarantor can choose to pay the guaranteed debt and be subrogated to the lender's position, to bid for the property, or to claim an offset against the sums otherwise due on the guaranty. And it comports with the common law view that a guarantor's

liability is "premised on a separate and distinct contract of guaranty rather than on any obligations imposed by the notes and mortgages subject to a foreclosure action." *Alerus Fin., N.A. v. Marcil Grp. Inc.*, 806 N.W.2d 160, 167 (N.D. 2011). Consistent with prevailing law, before 1986, suits on guaranties in Nevada were governed by general contract principles, not the foreclosure statutes. *Thomas v. Valley Bank of Nev.*, 97 Nev. 320, 322, 629 P.2d 1205, 1207 (1981) ("It has always been the law of this state that a contract of guaranty is not a secured obligation, even if the primary obligation is secured.").

But in 1986, this court decided *First Interstate Bank of Nevada v. Shields*, 102 Nev. 616, 730 P.2d 429 (1986). *Shields* revolutionized Nevada guaranty law by overruling *Manufacturers & Traders*, *supra*, and *Thomas*, *supra*, and extending the one-action rule and its associated protections to guarantors. *Shields*, 102 Nev. at 618, 730 P.2d at 430-31. The *Shields* decision has been widely criticized. *See In re SLC Ltd. V*, 152 B.R. 755, 773 (Bankr. D. Utah 1993) (rejecting *Shields* because "the better reasoned state court decisions" do not follow it (citing cases)); *Mut. of Omaha Bank v. Murante*, 829 N.W.2d 676, 684 (Neb. 2013) (dismissing *Shields* as not "persuasive"). And, it provoked an immediate outcry from Nevada's banking and business community, which pressed the 1987 and 1989 Nevada Legislatures to invalidate it. *See* Hearing on S.B. 359 Before the Senate Comm. on the Judiciary, 64th Leg. (Nev., April 16, 1987) (Nevada Bankers' Ass'n Summary Position Paper stating that "the *Shields* decision . . . has unfairly shifted the risk of loss to the lender, and has unilaterally destroyed reasonable lender reliance on a guarantor's contract of performance"); Hearing on A.B. 557 Before the Assembly Comm. on the Judiciary, 65th Leg. (April 19, 1989) (Nevada Bankers Ass'n Position

Paper advocating legislation to "restore the status of the law as it existed prior to *Shields*" as to commercial loans over $250,000).

In response, the Legislature limited, but did not entirely invalidate, *Shields*. Insofar as relevant here, the 1989 Legislature passed NRS 40.495(2), 1989 Nev. Stats., ch. 470, § 2, at 1001, which provides that a "guarantor . . . may waive the provisions of NRS 40.430" and that, if the guarantor signs such a waiver,

> . . . *an action for the enforcement of that person's [i.e., the guarantor's] obligation* to pay, satisfy or purchase all or part of an indebtedness or obligation secured by a mortgage or lien upon real property *may be maintained [by the lender] separately and independently from*:
>
> (a) An action on the debt;
>
> (b) The exercise of any power of sale;
>
> (c) *Any action to foreclose or otherwise enforce a mortgage* or lien *and the indebtedness or obligations secured thereby*; and
>
> (d) *Any other proceeding against a mortgagor or grantor of a deed of trust.*

(Emphasis added.) NRS 40.495(2) waivers may be had only in the context of guaranteed commercial loans exceeding $500,000; guarantors of residential, agricultural, or commercial loans under $500,000 retain the full protection of *Shields*. NRS 40.495(5).

## B.

This case involves a typical commercial land acquisition and development loan. BB&T (Bank) loaned $6,695,000 to a special purpose entity (Borrower) created to acquire and develop a piece of commercial real estate on the Las Vegas Strip. The loan was secured by a deed of trust on the property. The Bank required a personal payment guaranty, which Lavi supplied. In the guaranty, Lavi waived "Any right [he] may have to

require Bank to proceed against Borrower, proceed against or exhaust any security held by Borrower or Bank, or pursue any other remedy in Bank's power to pursue; [and] [t]o the extent permitted in paragraph 40.495(2) of the Nevada Revised Statutes, the benefits of the one-action rule under NRS Section 40.430."

Borrower defaulted, Lavi dishonored his guaranty, and on October 19, 2009, BB&T sued Lavi for breach of guaranty, seeking damages "in excess of $10,000" per NRCP 8(a). At roughly the same time, BB&T recorded a notice of default and election to sell the property, notifying Lavi as required by NRS 107.095. Lavi understood that BB&T sought judgment against him for the post-foreclosure deficiency on the guaranteed note. Thus, when Lavi answered BB&T's complaint on November 23, 2009, almost three months before the foreclosure sale, Lavi asserted, as a "separate, and affirmative defense, . . . that Plaintiff's [BB&T's] recovery, if any, must be offset by the amounts recovered by Plaintiff in *the* foreclosure proceeding."

The trustee's sale took place on February 11, 2010. Lavi did not bid at the foreclosure sale and BB&T acquired the property with a $3,275,000 credit bid against the $6,783,372 due on the note, leaving $3,508,372 unpaid.

Meanwhile, BB&T's lawsuit against Lavi continued apace. Both sides hired experts who gave conflicting estimates of the fair market value of the foreclosed property (FMV) as of the date of its sale of $2,330,000 (BB&T) and $4,420,000 (Lavi). They also exchanged written discovery. If NRS 40.455 applied, its 6-month deadline for making "application" for a "deficiency judgment" would have expired on August 10, 2010. Lavi's answer asserting offset as an affirmative defense and his

written discovery responses did not question BB&T's right to proceed to judgment against him under NRS 40.495(2), with Lavi receiving credit for the value of the foreclosed property as an offset. But on June 1, 2011, in response to BB&T's motion for partial summary judgment on liability, Lavi filed a countermotion for summary judgment in which he argued, for the first time, that BB&T forfeited its rights under the guaranty when it did not apply for a deficiency judgment against him "within 6 months after the date of the foreclosure sale," or by August 10, 2010, as required by NRS 40.455.

The district court granted partial summary judgment to BB&T. Lavi petitioned for extraordinary writ relief, which a divided en banc court granted by unpublished, or nonprecedential, order. *Lavi v. Eighth Judicial Dist. Court*, Docket No. 58968 (Order Granting Petition for Writ of Mandamus, May 24, 2013) (5-2). There followed a motion to publish the order as an opinion, which was denied, and the petition for rehearing now before us.

## II.

The majority's analysis suffers three principal flaws. First, it does not deal with the fact that, if an "application [for] . . . a deficiency judgment" was required under NRS 40.455, BB&T's complaint qualified as such and was timely under the statute's 6-month limitations period. Second, given Lavi's waiver, NRS 40.495(2) authorized BB&T to pursue him on the guaranty "separately and independently" from "any action" against the Borrower or the Borrower's security, making NRS 40.455 irrelevant. Third, new NRS 40.495(4), which applies specifically to suits against guarantors who have given NRS 40.495(2) waivers, confirms that, in this context, NRS 40.455 and NRS 40.459 do not apply because they are

inconsistent with NRS 40.495(4) and do not require an "application" beyond the pre-foreclosure complaint against the guarantor.

## A.

The 6-month deadline in NRS 40.455 is a statute of limitations or repose. Like most such statutes, its purpose is "to protect a defendant against the evidentiary problems associated with defending a stale claim" and "to promote repose by giving security and stability to human affairs." *Nev. State Bank v. Jamison Family P'ship*, 106 Nev. 792, 798, 801 P.2d 1377, 1381 (1990). Here, Lavi conceded at oral argument that BB&T's complaint against him for breach of guaranty qualified as an "application" for a "deficiency judgment" under NRS 40.455 in every respect except one: BB&T filed it three-and-a-half months *before* instead of "*within 6 months after*" the foreclosure sale (emphasis added). *See, e.g.*, *Shields*, 102 Nev. at 618 n.2, 730 P.2d at 430 n.2 (to make *application* for a "deficiency judgment" the lender must file a *complaint* against the guarantor within the time set by NRS 40.455). This would lead most people, at least non-lawyers, to ask: So, what, exactly, is the problem here? BB&T filed its "application" 9 months before the 6-month post-foreclosure-sale limitations period expired. Thus, Lavi knew even before the foreclosure sale that BB&T expected him to satisfy the Borrower's debt, to the extent the pledged real estate did not. No "evidentiary problems associated with . . . stale claim[s]" arose, and Lavi was not left wondering if his guarantee would be called. *Id.* And, by his answer and expert exchanges, Lavi fully joined with BB&T on the FMV and offset issues in their pending suit. *Cf. Grouse Creek Ranches v. Budget Fin. Corp.*, 87 Nev. 419, 426, 458 P.2d 917, 923 (1971) (NRCP 54(c) authorized the district court to amend

the pleadings to grant a primary lien where the objecting party joined issue on the matter and suffered no prejudice).[1]

In *Interim Capital, L.L.C. v. The Herr Law Group, Ltd.*, 2:09-CV-1606-KJD-LRL, 2011 WL 7053806 (D. Nev. Aug. 23, 2011), the United States District Court for the District of Nevada considered and rejected the position the majority adopts. The lender in *Herr* sued the defendant guarantors before foreclosure and the guarantors argued, as Lavi does, "that NRS 40.430, the 'one action rule' and NRS 40.455, the 'deficiency judgment statute,' protect them from a deficiency judgment, requiring application for judgment within six months after the date of the foreclosure sale." *Id.* The court disagreed. It concluded that the guarantors' argument conflated the time the lender's cause of action against the guarantors accrued (upon the borrower's default) with the outside 6-month limitations period established by NRS 40.455 (which the lender's pre-foreclosure suit satisfied):

> Plaintiff brought this action *before* the foreclosure sale, not after the foreclosure sale. The Court rejects the argument that this action could not be brought until *after* the foreclosure sale. Defendant guarantors waived the one action rule. The subject time provision acts only as a limitation of time within which an action may be brought. It does not purport to address when the cause of action accrued. Defendants' interpretation flies in the face of NRS 40.495 which allows actions against guarantors before a sale has occurred. Plaintiff's cause of action accrued upon default.

---

[1]Lavi does not argue that BB&T prejudiced his subrogation rights or caused other cognizable prejudice.

> The deficiency statute only functions to limit damages.

*Id.* (emphasis in original); *see Schuck v. Signature Flight Support of Nev., Inc.*, 126 Nev. ___, ___, n.2, 245 P.3d 542, 546 n.2 (2010) (this court may rely on unpublished federal district court opinions as persuasive, though nonbinding authority).

In other, more exacting contexts, this court has treated a premature filing as effective, so long as the proceeding has not been dismissed before the actual due date arrives. *See* NRAP 4(a)(6) (premature notice of appeal). No reason appears why a premature application for a deficiency judgment should not be treated the same way, especially since NRS 40.455's time deadline is procedural, not substantive or jurisdictional. *Nevis v. Fid. New York, F.A.*, 104 Nev. 576, 579, 763 P.2d 345, 347 (1988) (time limit in NRS 40.455 is procedural, not substantive, and so able to be judicially excused); *Vogt v. Dennett*, 105 Nev. 303, 304-05, 774 P.2d 1036, 1037 (1989) (to similar effect).

Nor does *Walters v. Eighth Judicial District Court*, 127 Nev. ___, 263 P.3d 231 (2011), counsel a different rule. *Walters* addressed the issue the parties in that case framed: whether the lender's "counterclaim, cross-claim, and written motion setting the grounds for the application and the relief sought satisfies the requirements of NRS Chapter 40 for seeking a deficiency judgment based upon a breach of guaranty." *Id.* at ___, 263 P.3d at 232. The court held that they did, noting that "NRS 40.455(1) does not state how an application should be made"[2] and that

---

[2]NRS 40.455's lack of specificity distinguishes it from the Utah statute considered in *Machock v. Fink*, 137 P.3d 779, 786-87 (Utah 2006). Even so, the Utah Supreme Court allowed the lender's pre-foreclosure

*continued on next page . . .*

"Walters fails to argue persuasively that [the lender's] motion for summary judgment did not meet the application requirement." *Id.* at ___, 263 P.3d at 234. Given this holding, the court did not need to decide whether, in a waived one-action rule case, the lender's pre-foreclosure-sale pleadings (complaint, counterclaim, or cross-claim) qualified as such. Issues raised but not decided because the case is resolved on another basis do not constitute the holding of a case, much less establish binding precedent. *Cf. Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) ("Questions which merely lurk in the record [of earlier cases and not] ruled upon, are not to be considered as having been so decided as to constitute precedents.").

Unlike Walters, Lavi *concedes* that BB&T's complaint was, in form, a qualifying "application" under NRS 40.455. His argument is that it was filed early so it didn't count. But *Shields*, 102 Nev. at 618 n.2, 730

---

*. . . continued*

complaint that did not meet Utah's technical requirements for a deficiency action to be amended after the statutory time to pursue a deficiency expired; doing so was consistent with the purposes of the statute "(1) to prevent the creditor from purchasing the property for below market value at the trustee's sale and then suing the debtor or guarantor for a large deficiency, . . . and (2) to provide a debtor or guarantor with prompt notice that the creditor intends to pursue a deficiency so as to allow the debtor or guarantor to plan its finances." *Id.* at 786. Since "these purposes were met and [the] failure to file a complaint strictly compliant with [Utah's] statutory requirements . . . was a procedural defect," the lender's right to a deficiency was preserved. *Id.* This accommodation is more consistent with Nevada's rules of pleading and practice than, in effect, requiring a superfluous filing entitled "deficiency application" to duplicate an already formally compliant complaint.

SUPREME COURT
OF
NEVADA

(O) 1947A

P.2d at 430 n.2, deems a complaint a qualifying "application" under NRS 40.455. *Accord Jamison*, 106 Nev. at 797-98, 801 P.2d at 1381 (an answer and counterclaim constitute a qualifying application). To read *Walters* as holding that BB&T's complaint—in form, a "qualifying application"—needed a post-foreclosure motion on penalty of forfeiture to satisfy NRS 40.455 is to impose a requirement nowhere stated in the statutes and that is inconsistent with *Shields* and *Jamison*. And, while a motion for summary judgment was available in *Walters* within the 6-month post-foreclosure-sale time frame, it was coincidental that the case was at the stage and in a condition to justify summary judgment practice. What about the case that is just beginning or in which, as here, factual disputes make summary judgment inappropriate? Surely it is not the rule that a pending suit, in which by their complaint and answer the parties have joined issue on the sums due under a guaranty after offset, needs to be dismissed and refiled in identical form, merely to satisfy an unstated requirement of NRS 40.455. *Washington v. State*, 117 Nev. 735, 739, 30 P.3d 1134, 1136 (2001) (a statute should always be construed so as to avoid unreasonable or absurd results).

## B.

Applying NRS 40.455 to impose a forfeiture on BB&T also cannot be squared with Lavi's waiver of "the benefits of the one-action rule under NRS Section 40.430 . . . [t]o the extent permitted in [NRS] 40.495(2)." The statute whose benefits Lavi waived, NRS 40.430, provides that, *"Except in cases where a person proceeds under subsection 2 of NRS 40.495 . . . , there may be but one action for the recovery of any debt, or for* the enforcement of any right secured by a mortgage or other lien upon real estate. *That action must be in accordance with the provisions of NRS 40.430 to 40.459, inclusive . . . ."* NRS 40.430(1) (emphasis added). Since

Lavi waived the protections of NRS 40.430, BB&T's action against him did not have to be pursued "in accordance with the provisions of NRS 40.430 to 40.459, inclusive." On the contrary, Lavi's waiver authorized BB&T to proceed against him "separately and independently" from "[a]ny action to foreclose or otherwise enforce a mortgage or lien and the indebtedness or obligations secured thereby [or] [a]ny other proceeding against a mortgagor or grantor of a deed of trust." NRS 40.495(2)(c) & (d).[3]

This does not deprive guarantors who waive the one-action rule of their fair value defenses, as the majority suggests. *See* NRS 40.459 (affording a deficiency defendant the right to have the deficiency calculated by using the greater of the FMV of the property as of the date of sale or the foreclosure sale price). Unlike the time deadlines in NRS 40.455, the fair market value approach is substantive, not procedural, in that it serves to avoid the unjust enrichment of the lender. *See* Restatement (Third) of Property: Mortgages § 8.4 cmt. a (1997). As an equitable defense designed to avoid unjust enrichment, a borrower or the borrower's guarantor is entitled to a fair market value offset post-foreclosure "whether a statute requires it or not." *Id.* To hold otherwise would be to sanction a double recovery, which our law does not allow. *See Elyousef v. O'Reilly & Ferrario, L.L.C.*, 126 Nev. ___, ___, 245 P.3d 547, 549 (2010). Because the fair market value approach is substantive, I would take it as applicable by virtue of NRS 40.459 to the one "action . . . in accordance with the provisions of NRS 40.430 to 40.459, inclusive" that NRS 40.430 prescribes, *and* as an available nonstatutory,

---

[3]Broad-form waiver of guarantors in the commercial loan context are routine—and routinely enforceable. *See* Cal. Civ. Code § 2856.

equitable defense in the "separate[ ] and independent[ ] . . . action" that NRS 40.495(2) authorizes when a guarantor has waived the protections of the one-action rule. *See* Restatement (Third) of Property, *supra*, § 8.4 cmt. b. In the context of a one-action proceeding under NRS 40.430, NRS 40.459 mandates the fair value determination. As an equitable defense to a proceeding not subject to the one-action rule, it is not self-executing and thus waived if not raised as an affirmative defense. Restatement (Third) of Property, *supra*, § 8.4 cmt. a.

## C.

Recognizing BB&T's right to proceed "separately and independently" from the one-action rule procedures, including NRS 40.455, harmonizes the version of NRS 40.495 at issue in this case with the Legislature's amendment of it to add new subsection 4 in 2011. NRS 40.495(4) now specifically addresses the situation where, as here, "before a foreclosure sale . . . the obligee commences an action against a guarantor . . . to enforce an obligation to pay . . . all or part of an indebtedness or obligation secured by a mortgage or lien upon the real property." It expressly gives the guarantor who has waived the one-action rule a fair value defense. Unlike the fair value defense given one-action rule deficiency defendants in NRS 40.459, which directs the court to determine value *as of the date of the foreclosure sale*, the defense given guarantors in new NRS 40.495(4) calculates fair value according to the value of the property *"as of the date of the commencement of the action."* And, confirming that the "application" requirement in NRS 40.455 is not needed in an NRS 40.495(2) pre-foreclosure suit against a guarantor, new NRS 40.495(4) imposes no separate "application" requirement, treating the pre-foreclosure complaint as the application.

Supreme Court
of
Nevada

(O) 1947A

14

When the 2011 Legislature added new subsection 4 to NRS 40.495, it did not change a word in NRS 40.455 and NRS 40.459, as relevant to this case. Thus, today, NRS 40.495(4) conflicts with NRS 40.455 and NRS 40.459, as interpreted by the majority here to apply to NRS 40.495(2) pre-foreclosure suits by lenders against guarantors. NRS 40.459 measures FMV as of the date of the foreclosure sale, while NRS 40.495(4) measures FMV as of the date of the commencement of the action. And NRS 40.495(4) requires no "application" beyond the lender's complaint against the guarantor, while the majority reads NRS 40.455 as imposing an additional application-by-motion requirement. "[T]his court has a duty to construe statutes as a whole, so that all provisions are considered together and, to the extent practicable, reconciled and harmonized." *Cromer v. Wilson*, 126 Nev. 106, 110, 225 P.3d 788, 790 (2010). Reading new NRS 40.495(4) in harmony with the rest of NRS 40.430-40.512, the more reasonable view is that NRS 40.455 and NRS 40.459 do not apply to suits under NRS 40.495(2).

Lavi and the majority argue that this reading of NRS 40.430 and NRS 40.495(2) repudiates NRS 40.495(3), which provides, "If the obligee maintains an action to foreclose or otherwise enforce a mortgage or lien and the indebtedness or obligations secured thereby, the guarantor, surety or other obligor may assert any legal or equitable defenses provided pursuant to the provisions of NRS 40.451 to NRS 40.4639." But the language "action to foreclose or otherwise enforce a mortgage or lien and the indebtedness or obligations secured thereby" in NRS 40.495(3) necessarily refers to the one action described in NRS 40.430. To read it more broadly would make NRS 40.495(2) inapplicable to all suits by a lender against a guarantor who has waived his NRS 40.430 protections

except those prosecuted to final judgment before a foreclosure occurs. This is inconsistent with NRS 40.495(2)'s provision that such a suit may proceed "separately and independently" from "[a]ny action to foreclose or otherwise enforce a mortgage or lien and the indebtedness or obligations secured thereby," NRS 40.495(2)(c), and with new NRS 40.495(4). And, as noted above, Lavi's fair value defense exists with or without a statute, though today it is assured by NRS 40.495(4).

Finally, Lavi argues that NRS 40.453 mandates that NRS 40.455 and NRS 40.459 apply to NRS 40.495(2) suits. NRS 40.453(1) says that, "*Except as otherwise provided in NRS 40.495*: . . . [i]t is hereby declared by the Legislature to be against public policy for any document relating to the sale of real property to contain any provision whereby a mortgagor or the grantor of a deed of trust or a guarantor or surety of the indebtedness secured thereby, waives any right secured to the person by the laws of this state." (Emphasis added.) Here, in permitting waivers by guarantors of NRS 40.430 and providing for suits against them to be maintained "separately and independently" from the proceedings, if any, against the borrower, NRS 40.495(2) "otherwise provide[s]." Thus, NRS 40.453 does not apply.

### III.

"The law abhors a forfeiture." *Humphrey v. Sagouspe*, 50 Nev. 157, 171, 254 P. 1074, 1079 (1927). Yet, that is the result of today's holding, which resurrects the clearly waived one-action rule, midsuit, and springs it on a lender proceeding "separately and independently" against its guarantor as statutorily authorized by NRS 40.495(2). In my view, where a guarantor waives his NRS 40.430 rights as permitted under NRS 40.495(2), and the lender sues the guarantor before foreclosing on the borrower's deed of trust, the lender may prosecute its suit against the

guarantor to conclusion, subject only to an equitable fair value defense pre-2011, and the more specific fair value defense given by NRS 40.495(4), post-2011. This is fair to both sides, avoids forfeiture and double recovery, and harmonizes NRS 40.495(2) with NRS 40.495(3) and the recently enacted NRS 40.495(4).

For these reasons, I respectfully dissent.

_____, J.
Pickering

I concur:

_____, J.
Hardesty

SUPREME COURT
OF
NEVADA

(O) 1947A